Milton GURVITZ and Sylvia Gurvitz, Plaintiffs,

v.

BREGMAN & CO., Defendant.

No. 73 Civ. 3970.

United States District Court,
S. D. New York.

Aug. 6, 1974.

Bruce S. Bandes, New York City, for plaintiffs.

Lipkin, Gusrae & Held, New York City, for defendant.

———◇———

GURFEIN, District Judge:

This is a motion pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

The complaint is by two customers against a stock broker, Bregman & Co. Plaintiffs allege that defendant has violated Section 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q, and Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("1934 Act") 15 U.S.C. § 78j(b) and 78t(a) and (b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.[1] As their second count, plaintiffs claim liability on the part of defendant for its alleged violation of the Rules of Fair Practice of the National Association of Securities Dealers, Article I § 8 and Article III § 21.[2] For their third and final count, under the rubric of pendent jurisdiction, plaintiffs claim that defendant fraudulently and negligently handled their stock brokerage account.[3] No diversity of citizenship is claimed.

The early paragraphs of the complaint[4], which are incorporated by reference into all three claims for relief

1. Compl. ¶ 1.

2. Compl. ¶ 28. Article III, Section 21 is set forth as follows:
   "(a) Each member shall keep and preserve books, accounts, records, memoranda, and correspondence in conformity with all applicable laws, rules, regulations and statements of policy promulgated thereunder and with the Rules of this Association."
   Article I, Section 8 is not set forth in the complaint.

3. Compl. ¶¶ 31–41.

4. ¶¶ 1–25.

under attack, may be summarized as follows.

During February, 1968, the plaintiffs purchased through defendant, with whom they maintained a stock brokerage account, 100 shares of Camin Industries Corporation common stock ("Camin"). Subsequent to that date, various purchases of Camin common stock were made through the defendant so that as of February 7, 1969, the plaintiffs were the owners of 300 shares of Camin common stock and 400 units, each unit consisting of two shares of common stock and one common stock purchase warrant which entitled the holder thereof to purchase one share of common stock at various prices over the life of the warrant. All the purchases made by the defendant on plaintiffs' behalf were made and held by the defendant in "street name." No shares or units were ever delivered to the plaintiffs.

On about February 17, 1969, Camin sent to its shareholders of record a written notification informing them that its Board of Directors had, on January 15, 1969, declared a two-for-one stock split to shareholders of record as of February 7, 1969. On or about February 28, 1969, Camin sent to its shareholders of record a certificate of stock representing the additional shares to which the shareholders were entitled as a result of the stock split. Since the plaintiffs were not stockholders of record, Camin did not forward to the plaintiffs either the notice of the split or the certificate. It is alleged that sufficient notices and certificates were sent to brokers for distribution to their customers for whom they held Camin stock in "street name." Defendant did not forward either the notice or the certificate to the plaintiffs. The plaintiffs allege that they were, therefore, never aware of the true amount of the shares which they owned.[5] Plaintiffs allege, moreover, that from the date of the stock split until shortly before this action was commenced on September 17, 1973, they received monthly statements from the defendant which showed them to be the owners of far fewer shares of Camin stock than they actually owned.

Plaintiffs claim that as a result of the allegedly "false, fraudulent and inaccurate statements sent by defendant to plaintiffs, plaintiffs were unaware of the true value of their holdings in Camin and therefore were unable to take advantage of the tremendous increase in the value of the stock."[6] The plaintiffs allege that the value of their stockholdings at the time of the stock split was approximately $45,400 and approximately $8,359 at the date they discovered that a stock split had been made. They claim damages in the amount of at least $37,041.

The defendant moves to dismiss the first count on the ground that the stock split did not constitute a "sale" within the meaning of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir. 1956), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1956). It moves to dismiss the second count on the ground that the alleged violation of a rule of the National Association of Securities Dealers ("NASD") does not support a claim for private federal civil liability.

The defendant is right on both grounds.

## I

██ The plaintiffs allege that the "stock split" constituted a "sale."[7] That is not so. The Securities Act of 1933, Section 2(3), 15 U.S.C. § 77b(3) defines the term "sale" or "sell" as follows:

"The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security for *value*." (Emphasis added.)

5. Compl. ¶ 17.

6. Compl. ¶ 20.

7. Compl. ¶ 18.

The Securities Exchange Act of 1934, Section 3(14), 15 U.S.C. § 78c(a)(14) contains the definition:

"The terms 'sale' or 'sell' each include any contract to sell or otherwise dispose of."

"The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."

1934 Act, § 3(13), 15 U.S.C. § 78c(a)(13).

A stock split, in spite of the enthusiasm with which it is generally greeted, is simply the distribution of two or more pieces of paper for one. Cf. Hafner v. Forest Laboratories, Inc., 345 F.2d 167 (2 Cir. 1965) ("stock dividend"). Stock splits do not involve a "sale" under the Securities Act of 1933. "The conference committee omitted a House provision exempting stock dividends because 'they do not constitute a sale, not being given for value.' H.R.Rep.No.152, 73rd Cong. 1st Sess. (1933) 25; Sec. Act Release 3728 (1958) 3." Loss, Securities Regulation, 517.

It could be suggested that the definition of "buy" in the 1934 Act is broader than the definition in the 1933 Act because the phrase "for value" is omitted, and that applied literally the shareholder is "otherwise acquiring" the new certificate resulting from the stock split. But I think this would be putting literalism above substance. The Second Circuit in its seminal decision in *Birnbaum, supra,* reviewed the legislative history and determined that the only purpose of Rule 10b–5 was to apply the same standard against deception on behalf of sellers that Section 17 of the Securities Act did on behalf of purchasers. See Shaw v. Dreyfus, 172 F.2d 140 (2 Cir. 1949), cert. denied, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (§ 16 [b] of 1934 Act).

The *Birnbaum* doctrine itself, though admitting of some stretching, still requires that the fraud be in connection with "the purchase or sale of a security."

Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); cf. International Controls Corp. v. Vesco, 490 F.2d 1334, 1343 (2 Cir. 1974) ("dividend in kind"); Haberman v. Murchison, 468 F.2d 1305, 1311 (2 Cir. 1972); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2 Cir. 1969); Greenstein v. Paul, 400 F.2d 580 (2 Cir. 1968).

In the case at bar there was no "sale" and hence no federal jurisdiction under Count 1.[8]

## II

The second count is brought under Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa to enforce rights arising from the defendant's alleged violations of the Rules of Fair Practice of the NASD.

The particular rule set forth in the Complaint (¶ 28) is Article III, Section 21, which provides:

"(a) Each member shall keep and preserve books, accounts, records, memoranda, and correspondence in conformity with all applicable laws, rules, regulations and statements of policy promulgated thereunder and with the Rules of this Association."

It is alleged that if proper records had been kept, the plaintiffs would have known "the true status" of their account. It concludes that the defendant's failure to advise the plaintiffs of the stock split and its failure to keep proper books and records constitute a violation of the NASD rule and render the defendant liable to the plaintiff.

The NASD rule relied upon is as general as the rule requiring "just and equitable principles of trade" which was considered in Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2 Cir. 1966). The Court of Appeals there held that breach of a Stock Exchange or NASD rule does not of itself imply a federal cause of action under the Securities Exchange Act of 1934. The duty to keep proper books seems to differ in no substantial respect

---

**8.** In view of this determination, it is unnecessary to determine whether "fraud" is alleged with sufficient particularity. Fed.R. Civ.P. 9(b).

from the duty to be "just and equitable." The reasons given by Judge Friendly for the result in *Colonial Realty* apply as well to the case at bar. If the plaintiffs cannot sustain federal jurisdiction under Section 10(b) and Rule 10b–5 promulgated thereunder, they cannot independently sustain jurisdiction under Sections 6(b) or 15A(b)(8), 15 U.S.C. §§ 78f(b), 78o–3(b)(8).[9]

## III

With the dismissal of the counts claiming federal jurisdiction, count three —the common law count—must also be dismissed, since there is no diversity of citizenship. See Kavit v. A. L. Stamm & Co., 491 F.2d 1176 (2 Cir. 1974) (Friendly, J.). The action properly belongs in the State Court. It is a common garden variety of suit by a customer against his broker.

The complaint is dismissed.

9. Section 6(b) of the Securities Exchange Act provides:

"No registration shall be granted or remain in force unless the rules of the exchange include provision for the expulsion, suspension, or disciplining of a member for conduct or proceeding inconsistent with just and equitable principles of trade, and declare that the willful violation of any provisions of this chapter or any rule or regulation thereunder shall be considered conduct or proceeding inconsistent with just and equitable principles of trade."

Section 15A(b)(8) forbids registration of a national securities association unless: "the rules of the association are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to provide safeguards against unreasonable profits or unreasonable rates of commissions or other charges, and, in general, to protect investors and the public interest, * * *."