**Mary D. PLUNKETT**

v.

**DOMINICK & DOMINICK, INCORPORATED, et al.**

**Civ. No. N–75–161.**

United States District Court, D. Connecticut.

April 27, 1976.

William J. Doyle, New Haven, Conn., for plaintiff.

Stephen I. Traub, New Haven, Conn., Anthony J. DePanfilis, Darien, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS

NEWMAN, District Judge.

These motions to dismiss counts I, II, and III of the amended complaint by defendant Reynolds Securities, Inc. [Reynolds] and to dismiss counts II and III of the amended complaint by Dominick & Dominick, Incorporated [Dominick] raise unsettled issues concerning the secondary liability of a broker-dealer for the acts of one of its employees.[1] The complaint alleges that defendant Donald Burns began to trade excessively in the plaintiff's account in April of 1973 when he was employed by Dominick, with whom plaintiff maintained a securities account. Subsequently the business of Dominick's branch office in Boston was transferred to Reynolds, and in that transfer of business Reynolds took over the plaintiff's account. Burns became an employee of Reynolds and remained directly responsible for plaintiff's account. It is alleged that, both as an employee of Dominick and of Reynolds, Burns engaged in excessive trading in plaintiff's account while concealing this fact from her. It is further alleged that he concealed the fact that he was borrowing against her securities portfolio in order to finance speculative purchases.

Count I alleges that Burns engaged in highly speculative trading of plaintiff's account and that this constitutes a manipulative or deceptive device in violation of § 10 of the Securities and Exchange Act of 1934. Count II alleges that by permitting one of its employees to engage in this activity, Reynolds and Dominick violated § 2, Article III of the Rules of Fair Practice of the National Association of Securities Dealers [NASD]. Count III alleges that Reynolds and Dominick violated paragraph 2 of Rule 405 of the New York Stock Exchange [NYSE] and § 27 of Article III of the NASD's Rules of Fair Practice.

I

Reynolds contends that it cannot be liable for the acts of one of its employees under a *respondeat superior* theory, which seems to be the basis of the claim against Reynolds contained in the first count of the amended complaint. That count fails to allege that Reynolds is liable for a violation

---

1. Jurisdiction is predicated upon 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and 28 U.S.C. § 1332. The failure of plaintiff to state a federal cause of action against Reynolds and Dominick would not, of course, deprive the Court of jurisdiction to consider any proper state causes of action against those defendants because diversity jurisdiction exists for those claims. *Cf. Walling v. Beverly Enterprises*, 476 F.2d 393, 398 (9th Cir. 1973).

of the standards prescribed in § 20(a) of the 1934 Act (15 U.S.C. § 78t). Absent such an allegation or an allegation of Reynolds' actual knowledge of its employees' acts, the *respondeat superior* theory or a theory based upon a negligent failure to supervise its employees provide the only bases for plaintiff to assert her Rule 10b–5 claim against Reynolds.

The distinction between secondary liability under § 20 and secondary liability under the *respondeat superior* theory is not entirely esoteric. Section 20 specifically allows the controlling person to avail himself of a good faith defense. See, *e. g.*, *Mader v. Armel*, 461 F.2d 1123 (6th Cir. 1972). By contrast, the defense of good faith is not available under the normal application of *respondeat superior* principles. See *Restatement (Second) of Agency* § 216 (1957). Secondary liability predicated upon negligent failure to supervise falls between these poles: a defense of adequate supervision would be available.

In recent years courts have imposed increasingly stringent standards of care upon broker-dealers. See *Chasins v. Smith, Barney and Co.*, 438 F.2d 1167 (2d Cir. 1970); *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202 (9th Cir. 1970). Invocation of *respondeat superior* principles in a suit for damages against a broker-dealer would thrust the employer broker-dealer into the role of insurer for the acts of its employees within the scope of their employment, and some courts have concluded that this greater degree of liability should be imposed upon broker-dealers. *Carras v. Burns*, 516 F.2d

251 (4th Cir. 1975); *Fey v. Walston & Co.*, 493 F.2d 1036 (7th Cir. 1974); *Lewis v. Walston & Co.*, 487 F.2d 617 (5th Cir. 1973); *Armstrong, Jones & Co. v. SEC*, 421 F.2d 359 (6th Cir. 1970); *Johns Hopkins University v. Hutton*, 297 F.Supp. 1165 (D.Md. 1968), *aff'd in part, rev'd in part*, 422 F.2d 1124 (4th Cir. 1970).

Two cases recently decided by the Court of Appeals for this Circuit in the context of SEC enforcement proceedings have cast some light upon the theoretical underpinnings of an employer broker-dealer's secondary liability for the acts of its employees. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975), presented the Court of Appeals with the SEC's claim for injunctive relief against an employer broker-dealer whose vice-president had submitted fraudulent stock quotations in the over-the-counter market. Chief Judge Kaufman held that the employer broker-dealer could be enjoined from violation of the antifraud provisions of the act, although the only violation of the securities laws adduced at trial was the trading activity of the firm's vice-president. In that case the employer broker-dealer argued that its liability ought to be measured by the "controlling person" standard contained within § 20, *i. e.*, that the good faith defense ought to be available. The court rejected that claim, reasoning that § 20 was designed "to expand, rather than restrict, the scope of liability under the securities laws." [2] *Id.* at 812. Judge Kaufman stressed, however, "that we intimate no view as to other cases which may involve lesser employees, actions for damages, other

2. Judge Tyler's review of this area of the law in *SEC v. Lum's, Inc.*, 365 F.Supp. 1046, 1063–64 (S.D.N.Y.1973), had argued for the opposite conclusion. The insurer's liability standard had been proposed and rejected by the Congress during the debates surrounding the 1934 amendments to the 1933 and 1934 Acts. Judge Tyler reasoned that Congress consciously determined that some degree of culpability was to be a prerequisite to liability under the 1933 and 1934 Acts, albeit that the legislators were primarily concerned with the liability of corporate directors, not employer broker-dealers. *See Gordon v. Burr*, 506 F.2d 1080, 1085 (2d Cir. 1974). Accordingly, *Lum's* held that the sole

basis for employer broker-dealer liability was § 20, but concluded that lack of good faith and negligent supervision were equivalent legal standards subsumed within § 20.

One writer has suggested a test whereby § 20 would remain the sole basis of employer broker-dealer liability. *Note, The Burden of Control: Derivative Liability Under Section 20(a) of the Securities Exchange Act of 1934*, 48 N.Y.U.L.Rev. 1019 (1973). The author suggests that the duty to supervise may provide a basis for secondary liability within the ambit of § 20, rather than requiring agency principles to be imported into the federal securities laws or lowering the 10(b) standard of knowledge in

agency principles, or respondeat superior, which may be broader than the apparent authority involved here." *Id.* at 813.

Judge Friendly reviewed the *Management Dynamics* holding in *SEC v. Geon Industries, Inc.*, 531 F.2d 39 (2d Cir. 1976). In *Geon* a registered representative of an employer broker-dealer engaged in some highly speculative trading, and the SEC sought an injunction against the employer broker-dealer based upon the acts of the representative. Absent a showing of lack of reasonable supervision by the employer broker-dealer, the Court ruled that an injunction should not issue. As to the breadth of the *Management Dynamics* rationale, Judge Friendly wrote:

> To say that an injunction must issue against a brokerage firm whenever one could have been issued against a registered representative significantly over-reads *Management Dynamics*. As the carefully qualified approach of the case makes clear, the fact that use of common law agency concepts may be appropriate in some circumstances does not mean that we should import them where this will not further the policies of the securities acts.

*Id.* at 54.

But if Judge Kaufman's opinion in *Management Dynamics* intimated no views on

actions for damages and *respondeat superior*, Judge Friendly's opinion in *Geon* contains signals that cannot be ignored. In the first place he cited, with apparent approval, the cases in which liability has been imposed on brokerage firms for acts of their employees. *Id.* at 55. Secondly, he observed that the brokerage house in *Geon* had permitted its customers to rescind "(d)oubtless in part because of its recognition of such liability." *Id.* It is not realistic to believe that Judge Friendly thought the brokerage house was recognizing a liability that he thought non-existent. Finally, Judge Friendly justified denial of the injunction in part because of the availability of the alternative remedies provided by the cases imposing liability for damages for acts of employees. *Id.* In Judge Friendly's view, the injunction, with its collateral consequences, was the greater remedy, which was not justified on the facts of the case before him.

The statutory history offers scant evidence that Congress even considered whether to hold broker-dealers liable for money damages for the acts of their employees.[3] The history of § 20(a), which Judge Tyler found persuasive for limiting broker-dealer's liability when a good faith defense is established, *SEC v. Lum's Inc.*, 365 F.Supp. 1046, 1061–65 (S.D.N.Y.1973), concerns pri-

---

actions for damage to that of negligence. "[I]n the broker-dealer context, the 'good faith' component of the section 20(a) defense is no longer a matter of subjective knowledge and inducement but has an objective referent—compliance with standards of reasonable care in supervision." *Id.* at 1037.

**3.** In Sonde & Freedman, *"Seagulls on the Water—Some Ships in a Storm": A Comment on Lanza v. Drexel*, 49 N.Y.U.L.Rev. 270 (1974), the authors argue that the *Lanza* Court's statutory analysis was erroneous. Sonde and Freedman maintain that the legislative history supports the conclusion that Congress did intend to create a cause of action based upon mere negligent conduct by directors, including a failure to supervise. *Id.* at 276–92.

Whatever may be the validity of this argument, it is interesting to note the Second Circuit's dicta in *Lanza* that " 'Directors cannot be expected to exercise the kind of supervision over a corporation president that brokers must

exercise over salesmen,' " (quoting *Moerman v. Zipco*, 302 F.Supp. 439 (E.D.N.Y.1969)). This language indicates that the culpability requirement imposed by *Lanza* in the director context does not necessarily have to be extended to the employer broker-dealer situation. Nor does the subsequent citation by the *Lanza* court of *Kamen & Co. v. Paul H. Aschkar & Co.*, 382 F.2d 689 (9th Cir. 1967), compel an opposite conclusion. While *Kamen* analyzed broker-dealer liability solely in terms of § 20, the Second Circuit pointedly referred to *Kamen* as a case in which "the partners of the defendant did not know nor did they *have reason to know* of the fraud of their agents." *Lanza v. Drexel, supra* at 1301 (emphasis added). The Court thus recognized that there might be instances in which an employer broker-dealer might be found liable at least for negligent failure to discover the fraud of its agents. *See Isaacs v. Chartered New England Corp.*, 378 F.Supp. 370, 374 & n.1 (S.D.N.Y.1974).

marily directors, not employers of securities salesmen, and, in any event, *Management Dynamics* rejected Judge Tyler's view of § 20(a). 515 F.2d at 811–13; *SEC v. Geon Industries, supra* at 54.

If a cause of action is to be implied for fraudulent activities of securities salesmen, it is appropriate to hold their employers liable unless Congress elects to provide complete or partial insulation. An investor comes to a broker-dealer because the house holds itself out as competent in the handling of investments. The investor obviously understands that he bears the risk that the value of his investment may fluctuate according to the vicissitudes of the market and the acumen of his broker-dealer, but he does not undertake the risk that an agent of the broker-dealer will deal fraudulently with his account. Holding the broker-dealer liable allocates the risk of loss to the entity best able to prevent a loss and most able to sustain the monetary repercussions of the illegal act.

Whether the full rigor of the doctrine of *respondeat superior* is appropriate in the context of fraudulent acts of securities salesmen need not be decided at this point. But the doctrine is sufficiently available to permit the claim pleaded in count I to survive a motion to dismiss.

## II

■ Count II of the amended complaint alleges a cause of action under § 2, Article III of the Rules of Fair Practice of the National Association of Securities Dealers, which provides:

> In recommending to a customer the purchase, sale or exchange of any security a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings

and as to his financial situation and needs.

Count III of the amended complaint alleges a cause of action pursuant to paragraph 2 of Rule 405 of the New York Stock Exchange and § 27 of Article III of the Rules of Fair Practice of the National Association of Securities Dealers.[4] These two rules impose upon the employer broker-dealer the duty to supervise diligently all accounts handled by employees of the broker-dealer. Defendants claim that while these rules may impose ethical standards upon the broker-dealer, they do not provide the basis for an implied federal cause of action under § 27 of the Securities Exchange Act (15 U.S.C. § 78aa).

The 1934 Act provides in § 27 that the district courts shall have exclusive jurisdiction to hear "all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." The Supreme Court's decision in *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), spawned numerous lawsuits in which private plaintiffs invoked federal court jurisdiction under § 27 to seek damages for violations of the federal securities acts. The status of claims based upon an implied liability for violation of stock exchange or NASD rules is more uncertain than the rather substantial foundation that courts have established for 10b.5 violations.

The standard for the implication of federal civil liability from dealer or stock exchange rules was stated by Judge Friendly in *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir. 1966):

> The court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the

---

4. Paragraph 2 of New York Stock Exchange Rule 405 provides:

Every member organization is required through a general partner, a principal executive officer or a person or persons designated

under the provisions of Rule 342(b)(1) to . . . (2) Supervise diligently all accounts handled by registered representatives of the organization. . . .

890

statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law. 358 F.2d at 182.

Applying this standard to the very general rule at issue in *Colonial Realty*, which prohibited exchange members from engaging in conduct inconsistent with "fair and equitable principles of trade," Judge Friendly concluded that no private cause of action existed under that rule.

In *Colonial Realty* Judge Friendly expressed concern that the NYSE rule involved in that case had not been adopted by the SEC and would, if held to create a federal cause of action, transform the "garden variety" state court customer-broker lawsuit into a federal lawsuit. *Colonial Realty Corp. v. Bache & Co., supra* at 183. Absent some specific indication from Congress, at least through the administrative mechanism of the SEC rulemaking procedures, Judge Friendly declined to extend federal jurisdiction "into preserves traditionally occupied by the states." *Id.* n.6. Within a year after the advent of *Colonial Realty* the SEC adopted rules similar to certain NASD and NYSE rules.[5] The promulgation of such rules by the SEC is certainly some evidence that the duties imposed by those rules may be considered "an integral part of SEC regulation." *Id.* at

182; *cf. Landy v. Federal Deposit Insurance Corp.*, 486 F.2d 139, 166 (3d Cir. 1973); Wolfson & Russo, *The Stock Exchange Member: Liability for Violation of Stock Exchange Rules*, 58 Calif.L.Rev. 1120, 1136–39 (1970).

While the SEC's view of a broker-dealer's duty to supervise his employees is certainly of some significance, adoption of a rule imposing stringent standards of conduct does not lead ineluctably to the conclusion that a federal court ought to create the basis for a lawsuit in damages for breach of that rule. See *SEC v. Lum's, supra* at 1062. Applying the standards developed in *Colonial Realty*, I conclude that neither the suitability nor the supervision rules at issue here should be the basis for federal court damage actions.[6] If § 20 does not constitute the exclusive source of employer broker-dealer liability under the federal securities laws, common law principles of agency and negligence would provide additional bases of liability under § 10(b), either via *respondeat superior*, as I have concluded, *supra*, or in any event, for breach of a duty to supervise. Even under the latter theory, broad liability would exist under the federal securities law, and it would be superfluous to imply a cause of action under the suitability and supervision rules since the duties imposed under those rules are identical to what is at least imposed at common law.

**5.** The Commission's version of the suitability rule is Rule 15b10–3 (17 C.F.R. § 240–15b10–3). Its version of the supervision rule is Rule 15b10–4 (17 C.F.R. § 240.15b10–4).

One law review commentator has noted that despite the adoption by the SEC, NASD, and NYSE of some form of suitability rule, none of these rules defines the term "suitability." Comment, *Civil Liability for Violation of NASD Rules: SEC v. First Securities Co.*, 121 U.Pa.L.Rev. 388, 394–96 (1972). The author cautions against the implication of a private cause of action under the rule, arguing that judicial nonintervention will free the NASD to flesh out the meaning of "suitability" in an administrative process. *See SEC v. Geon Industries, Inc., supra* at 55 n.21.

**6.** *But see Avern Trust v. Clarke*, 415 F.2d 1238 (7th Cir. 1969); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith*, 410 F.2d 135 (7th Cir. 1969); *Geyer v. Paine, Webber, Jackson & Cur-*

*tis, Inc.*, 389 F.Supp. 678 (D.Wyo.1975); *see Starkman v. Seroussi*, 377 F.Supp. 518 (S.D.N.Y.1974).

Judge Lasker has noted that none of these cases establishes a *per se* cause of action for the violation of an exchange rule; "allegations of such violation have been held to state a claim only where coupled with sufficient allegations of fraud on the investor." *Schonholtz v. American Stock Exchange, Inc.*, 376 F.Supp. 1089, 1092 (S.D.N.Y.1974). Several courts have held on the facts of their particular cases that violations of stock exchange or dealer rules are not actionable in federal court. *Carras v. Burns*, 516 F.2d 251, 260–61 (4th Cir. 1975); *Gurvitz v. Bergman & Co.*, 379 F.Supp. 1283 (S.D.N.Y.1974); *Wells v. Blythe & Co.*, 351 F.Supp. 999 (N.D.Cal.1972); *see Bell v. Winer & Co.*, 392 F.Supp. 646, 651 (S.D.N.Y. 1975); *McCurnin v. Kohlmeyer & Co.*, 347 F.Supp. 573, 576 (E.D.La.1972).

Therefore both Reynolds and Dominick are entitled to dismissal of counts II and III. Such a dismissal hardly leaves the plaintiff without a remedy. Count I sets out a cause of action under § 10(b), and count IV sets out a cause of action under § 20. It is entirely within the realm of possibility that plaintiff may prevail against these two defendants on these theories.[7]

Accordingly, the motion to dismiss counts II and III insofar as they state federal causes of action against Reynolds and Dominick is granted.

---

7. *See Hecht v. Harris, Upham & Co.*, 430 F.2d 1202 (9th Cir. 1970).