Wesley ALVORD et al.

v.

SHEARSON HAYDEN STONE, INC.,
et al.

Civ. No. H–79–173.

United States District Court,
D. Connecticut.

Feb. 14, 1980.

Thomas H. Connell, Katz & Connell, Hartford, Conn., for plaintiffs.

William S. Rogers, Alcorn, Bakewell & Smith, Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

This action was brought by several plaintiff investors to recover for losses on their investments in certain stock option trading accounts. They claim that a securities salesman made express representations regarding the financial risks involved by their investing in certain stock option trading accounts. These accounts were being managed according to the salesman's own special "system" for trading stock options and his representations allegedly constituted a fraud against them, in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the rules of various options exchanges in which the plaintiffs' options were traded, and the laws of the State of Connecticut. The defendants, the securities salesman, his supervisor, and the brokerage firm for whom he worked, have moved to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds: (1) that the plaintiffs do not state a claim under the federal securities law, (2) that the plaintiffs do not have a cause of action for alleged violations of options exchange rules, and (3) in the absence of a violation of federal securities law, the Court should not proceed to exercise pendent jurisdiction over the state law claims. The Court finds that the sales of the stock option trading accounts to the plaintiffs are sales of securities within the meaning of that term as used in the Securities Act of 1933, the Securities Exchange Act of 1934, and Rule 10b–5, and that the plaintiffs have stated a sufficient claim for relief under these federal securities laws. The claims based on violations of exchange rules as they relate to broker's conduct are not allowed; but the Court will exercise pendent jurisdiction over the state law claims. Accordingly, the defendants' motion to dismiss is denied.

## Facts

The plaintiffs are independent stock option investors who allegedly sought conservative low-risk investments from the defendant, Shearson Hayden Stone, Inc., a securities broker in Hartford. They brought this action, for losses resulting from their investment in accounts at Shearson Hayden Stone, Inc. for trading in stock options, against the brokerage firm, its salesman who handled their trading accounts, as well as the branch manager of the firm. The plaintiffs claim that they invested in these accounts on the basis of representations by the securities salesman that if options were traded in these accounts according to his "system," then such an investment was virtually risk-free.

The lengthy evidential complaint alleges in substance that at the time of the first meeting between the plaintiff-investor, Joseph Mascolo, and the defendant-salesman, Anthony Mascolo [1], the latter orally represented that he had a "system" for trading in stock options. Joseph Mascolo explained that he was a conservative investor who did not wish to be involved with risky investments. The salesman assured him, however, that the salesman's "system" of options trading was "absolutely risk-free" and "virtually risk-free," that the most he could lose was "change," that the salesman was one of the leading experts in options trading, and that the salesman had selected him as one of a small number of persons with whom he would work using the "system."

It is further alleged that Joseph Mascolo told the salesman that he could not understand the "system," and that his stock portfolio made conservative provision for his retirement and his children's education. The defendant salesman then allegedly represented to the plaintiff that he didn't have to understand the "system" because the salesman would keep vigilant watch over the account, would even work on it in the evenings and on the weekends, and would tell the plaintiff all that he needed to know.

It is alleged that the plaintiff was told that he had only to follow the salesman's directions exactly. When the defendant finally stated that he could lose his license for saying that the "system" to be used for trading options in the account was risk-free, unless he was very sure that it was, the plaintiff consented to invest in an account using the defendant's "system." The complaint represents that the defendant knew or should have known that Joseph Mascolo had no idea of how the defendant-salesman's "system" worked, and that he was totally relying on him to the same extent as if it were a discretionary account. For the losses incurred in his options trading account, and for the losses in the accounts which he opened in the names of other members of his family, Joseph Mascolo claims $50,000 damages.

The other plaintiff-investors, Wesley Alvord and his wife, make similar allegations regarding representations made by the defendant-salesman in the sale of a stock option trading account to him. The complaint states that with respect to Alvord's account as well, the defendant knew or should have known that Alvord had no idea of how the defendant's "system" worked, and that he was totally relying on him to the same extent as if it were a discretionary account. It is alleged, moreover, that the defendant-salesman occasionally made trades for Alvord's account without informing him beforehand. There are also allegations that the salesman inaccurately calculated the profits and losses of the Alvord account, which further indicates that such investor lacked capacity to exercise his own discretion or supervise the defendant's activity with respect to the account.

## Jurisdiction

This action arises under the Securities Act of 1933, 15 U.S.C. § 77a et seq., the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and SEC Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

---

1. The plaintiff Joseph Mascolo is not related to the defendant Anthony Mascolo; the common last name is coincidental.

The Court's jurisdiction is invoked pursuant to 15 U.S.C. §§ 77v and 78aa. The complaint also sets forth state law claims of fraud, breach of fiduciary duty, breach of contract, negligence, conversion, and violation of the Uniform Securities Act, Connecticut Public Act 77–482, over which the Court exercises pendent jurisdiction.

### Discussion of Law

The central issue on this motion to dismiss for failure to state a claim under the federal securities law is whether the allegations in the complaint permit a finding that the defendant salesman sold the plaintiffs "securities," within the meaning of that term as employed in the Securities Act of 1933, The Securities Exchange Act of 1934, and Rule 10b–5. Count One of the plaintiffs' complaint alleges a violation of 15 U.S.C. § 77l, which imposes liability upon a person who offers or sells a security by means of an oral communication which includes any untrue statement of a material fact, or omits to state a material fact necessary in order to make the statement not misleading. Count Two alleges a violation of 15 U.S.C. § 77q, which makes it unlawful for a person, when making an offer or sale of a security, to engage in any practice or course of business which operates as a fraud upon the purchaser. Count Four alleges a violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 (Rule 10b–5), which prohibit the use of any manipulative or deceptive device in connection with the purchase or sale of a security. Thus, all of the provisions which the plaintiffs claim were violated would impose liability under certain circumstances, where one has committed a fraud in the offer or sale of a "security." [2] 15 U.S.C. §§ 77l, 77q, and 78j(b).

For the plaintiffs to prevail on their federal securities claims, it must be determined that what were fraudulently sold to them by the defendants were "securities" covered by the provisions of the Securities Acts under which these claims are being brought. The plaintiffs in this action do not claim fraud in the sale of any particular stock or stock option, although each of these has been held in other cases to constitute a "security" covered by the federal securities laws cited.[3] Nor does the complaint state specifically that there was fraud in the sale of the options trading accounts which the plaintiffs opened at Shearson Hayden Stone, Inc. Instead, the complaint alleges that the fraud in this case occurred in the sale to the plaintiffs by the defendant-salesman of a "system" of trading stock options. (See Plaintiffs' Memorandum on Defendants' Motion to Dismiss, p. 6, filed July 25, 1979). The Court's task, on this motion to dismiss, is to determine whether the facts alleged in the complaint, notwithstanding the plaintiffs' characterization of those facts, are sufficient to support a cognizable claim under federal law, specifically a claim of fraud in the sale of "securities" as that term is employed in the Securities Acts. See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1956).

The term "security" includes "any . . . investment contract." § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1); § 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). The Supreme Court has often reiterated the test to be employed in determining whether a particular financial relationship constitutes an "investment contract," and thus involves a "security" within the meaning of the Securities Act. In United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court stated that the test is:

> " 'whether the scheme involves an *investment* of money in a *common enterprise* with *profits to come solely from*

---

**2.** See Katz v. Amos Treat & Co., 411 F.2d 1046 (2d Cir. 1969) which extends liability under 15 U.S.C. § 77l to one who solicits an offer to buy.

**3.** The statutory provisions defining "security" explicitly include "stocks." 15 U.S.C. §§ 77b(1) and 78c(a)(10). Many courts have held stock options to be "securities" as well. See e.g. Lutgert v. Vanderbilt Bank, 508 F.2d 1035 (5th Cir. 1975); Lloyd v. Industrial Bio-Test Laboratories, Inc., 454 F.Supp. 807 (S.D. N.Y. 1978); See Also SEC v. Texas Gulf Sulfur Co., 401 F.2d 833 (2d Cir. 1968).

the efforts of others.' [S.E.C. v. W. J.] Howey [Co.], 328 U.S. [293], at 301 [66 S.Ct. 1100, at 1104, 90 L.Ed. 1244] [(1946)].

This test, in shorthand form, embodies the essential attributes that run through all of the Court's decisions defining a security." 421 U.S. at 852, 95 S.Ct. at 2060. (Emphasis added).

Accord, Teamsters v. Daniel, 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1978).

According to the test given by the Supreme Court, the trading "system" itself, which plaintiffs have claimed was the subject of the fraudulent sale, cannot be considered to be a "security" covered by the Securities Acts. The "system" as such was not the profit-making "enterprise;" it was merely one person's method of trading in stock options. Moreover, the plaintiffs did not "invest" in that system; they invested in accounts to be managed according to that system.

■ In applying the Supreme Court test for determining whether the defendants sold to the plaintiffs investment contracts, hence "securities" covered by the Securities Acts, the Court must examine the substance, that is the economic realities, of the transactions between the defendant-salesman and the plaintiff-investors, rather than merely observing the form according to which these transactions took place. See Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). A careful reading of the allegations contained in the complaint, which must be taken as true on this motion to dismiss, indicates that the plaintiffs may in fact have invested in such "securities" when they opened options trading accounts at Shearson Hayden Stone, Inc. to be managed according to the defendant-salesman's "system" for trading options. These representations indicate that the management of the accounts was left to the defendant-salesman's sole discretion. The plaintiffs allegedly did not have any idea how the decisions regarding the management of the accounts were to be made. One could conclude that these accounts were, in essence, discretionary accounts.[4]

■ De facto discretionary accounts may be considered to be investment contracts, and thus within the meaning of the term "security" as defined by the Securities Acts, if an examination into the economic realities involved in the defendant-salesman's sale of these options trading accounts indicates there was a sale of "investment contracts" according to the three-step test es-

4. In a case similar to the instant case, Johnson v. Arthur Espey, Shearson, Hammill & Co., 341 F.Supp. 764 (S.D.N.Y. 1972), the plaintiff alleged that the defendant securities-salesman solicited the opening of a commodities account over which such salesman would control the nature and volume of the transactions of the account. The Court in that case stated:

"Courts in this Circuit have held that where the broker-dealer has control of investment decisions made for a commodities account and has represented that the profits will result from his efforts alone, then this 'discretionary' is in effect an investment contract. Maheu v. Reynolds & Co., 282 F.Supp. 423, 426 (S.D.N.Y. 1968); Berman v. Orimex Trading Co., 291 F.Supp. 701, 702 (S.D.N.Y. 1968). See also Anderson v. Francis I. duPont & Co., 291 F.Supp. 705, 709 (D.Minn. 1968). This type of commodities account is an investment contract even where there is no formal agreement designating it as a 'discretionary account.' Berman, supra; Anderson, supra. Since the complaint alleges that defendant Espey, super-

vised by Shearson, made the investment decisions and let Pennon to expect profits solely from his efforts and expertise, plaintiff has stated a valid claim under § 10(b) and Rule 10b–5." 341 F.Supp. at 765–766.

See Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.Minn. 1968). Of course, it remains the plaintiffs' burden to prove that the trading accounts were, in essence, discretionary accounts. An explicit agreement to that effect is not necessary, lest a defendant be permitted to shield himself from liability for fraud in the sale of a discretionary account simply by soliciting an investment in an account which allows him the powers of a discretionary account but preserves the outward appearance of a nondiscretionary account. To hold otherwise would permit one to accomplish the fraud merely by defrauding an investor as to the nature of the account as well as the risk involved in such an account. Accordingly, the Court's holding will not prohibit evidence refuting a finding of a de facto discretionary account.

tablished by the Supreme Court. *See S.E.C. v. W. J. Howey*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), quoted above in *United Housing Foundation, Inc. v. Forman, supra.*

█ A review of the complaint, read in the light of the *Howey* test, reveals first, that the plaintiffs allegedly "invested" in the accounts at Shearson Hayden Stone, Inc. in the sense that they parted with money in the hope of receiving profits through the efforts of another party. *See United Housing Foundation, Inc. v. Forman, supra* 421 U.S. at 858, 95 S.Ct. at 2063. The placement of money into the options trading accounts may have been an engagement which subjected the plaintiffs to risks over which they had essentially no control. It was allegedly not explained to the plaintiffs how the defendant's "system" worked, and it was expected that the defendant-salesman would make all the decisions as to how the accounts were to be managed. One could find that in opening the accounts, consideration was given in return for a separable financial interest with the characteristics of a security. *See Teamsters v. Daniel, supra* 431 U.S. at 559, 99 S.Ct. 790.

With respect to the second consideration of the *Howey* test, the pleaded facts could permit a finding that the plaintiffs did invest in a "common enterprise." According to the meaning of that term, as other courts in this Circuit have interpreted it in the case of discretionary accounts, *see Troyer v. Karcagi*, 476 F.Supp. 1142, 1147 (S.D.N.Y. 1979), and as this Court now holds in the case of a de facto discretionary account, "commonality" of an enterprise requires only that there exist a one-to-one relationship between an investor and an investment manager, *i. e.* a "vertical commonality." It is not required that there be a pooling of monies from various investors, *i. e.* "horizontal commonality." Vertical commonality may have existed in the case at bar because, according to the relationship described in the complaint, the defendant-salesman was expected to be the plaintiff-investors' investment manager.

The final *Howey* inquiry is whether the plaintiffs invested in an enterprise according to which the hoped-for profits were to come "solely from the efforts of others." The representation in the complaint that all investment decisions with respect to the options trading accounts would be made by the defendant-salesman would plainly satisfy this requirement, if proven at the trial. *See Berman v. Orimex Trading, Inc.*, 291 F.Supp. 701, 702 (S.D.N.Y.1968); *Maheu v. Reynolds & Co.*, 282 F.Supp. 423, 426 (S.D. N.Y.1966). The minor stand-by observer role ascribed to the plaintiffs in the management of the accounts would not detract from this finding, if it was the efforts of the defendant-salesman which determined whether or not the investments in the options trading accounts were to be profitable. Thus, under the *Howey* test the plaintiffs may have purchased "securities" when they opened their accounts to be managed by the defendant using his "system".

█ Having determined that the defendant-salesman may have sold the plaintiffs "securities", the Court notes that the complaint alleges facts sufficient to constitute violations of the provisions of the Securities Acts cited by the plaintiffs. In the sale of the stock option trading accounts, the defendant allegedly orally communicated the untruthful statement that an investment in accounts managed according to his "system" was risk-free. If proven this would be a violation of 15 U.S.C. § 77*l*. The alleged misrepresentations to the plaintiffs would, if proven, demonstrate the existence of a practice or course of business which operated as a fraud upon purchasers of securities, in violation of 15 U.S.C. § 77q. On the basis of the facts upon which the trading accounts managed according to the defendant-salesman's "system" might be found to be "securities", it is clear that the defendant-salesman's misrepresentations to the plaintiff-investors regarding the risk involved in an investment into such accounts would have been made "in connection with" the purchase or sale of these securities. *See* 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder.

The defendant has objected to a finding of liability under 15 U.S.C. § 78j(b) and Rule 10b–5 on the grounds that the plaintiffs' allegations are not specific enough to support a claim for a violation of these provisions. In this connection, there is an obvious tension between Rule 8 of the Federal Rules of Civil Procedure, which requires that a pleading consist only of a "short and plain statement of the claim", and Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Second Circuit has held that "mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971). The Court finds that in the present case the facts alleged in the complaint are pleaded with such particularity as to put the defendants on notice as to the specifics of the fraud of which the plaintiffs complain. In addition, the complaint alleges facts which, if proven, would meet the essential elements of a Rule 10b–5 claim for relief. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

It is first required that the fraud involve the use of a means or instrumentality of interstate commerce. The numerous telephone and postal communications involved in the alleged fraud satisfy this requirement. The second element, the materiality of the misrepresentations made by the defendant, is satisfied by the allegations that the defendant-salesman represented that the plaintiffs' investment in options trading accounts managed according to his "system" was risk-free, and by allegations explaining the significance of these representations. The Court is not unmindful of the rule in this Circuit that "[n]ot every 'risky' investment rises to the level of fraud because the risk is insufficiently disclosed."

*Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978). Thus, the Court must carefully examine the defendant-salesman's representations and the context in which they were made, as set out in the complaint, in order to bring into focus the materiality of these alleged misrepresentations to the transactions between the defendant and the plaintiffs. Such examination reveals that the plaintiffs claim to have made it clear, that they specifically sought conservative, low-risk investments. In the face of these explicit explanations, the defendant securities salesman asserted his expertise, and then convinced the plaintiffs that an investment into options trading accounts managed according to his "system" was suitable to their stated objectives and was without risk of loss. The representations that there was no risk may have been material to the plaintiffs' decision to choose the defendants' accounts for their conservative investment. *See Securities and Exchange Commission v. Bausch & Lomb, Inc.*, 565 F.2d 8 (2d Cir. 1977); *Weitzman v. Stein*, 436 F.Supp. 895, 903 (S.D.N.Y.1977).

A successful 10b–5 claim for relief also requires a showing of scienter. *Ernst & Ernst v. Hochfelder, supra.* The complaint avers that the defendant made statements to the plaintiff-investor Joseph Mascolo that

> "he [Joseph Mascolo] should know that he [Anthony Mascolo] could lose his license for saying there was no risk and no way a customer could lose money, and that Joseph Mascolo should believe him because he would not jeopardize his license by saying the 'system' was risk free unless he was very sure it was," (Complaint p. 3, ¶ 12).

and that these statements were made with intent to deceive, manipulate, or defraud the plaintiffs. The complaint states reasonable grounds for a claim of scienter.[5]

The 10b–5 requirement that the plaintiffs state facts to support their reliance on the

---

**5.** The affidavits and depositions, to which the defendant refers in its memorandum in support of the motion to dismiss to dispute the plaintiffs' claim of scienter, need not be considered on this motion to dismiss for failure to state a claim. The defendant has the opportunity to present such evidence on a motion for summary judgment and at the trial.

defendant-salesman's representations is satisfied by specific allegations to that effect and by the averments that the plaintiffs were ignorant about the methods and the risks involved in trading stock options. The "in connection with" requirement is plainly satisfied, as noted above. The representation that damages resulted from the defendant's misrepresentations is a sufficient allegation of the last element of a Rule 10b–5 claim for relief. Accordingly, the plaintiffs have adequately stated a cognizable claim under that federal securities provision.

### Securities Exchange Rules

■ Count Three of the complaint alleges violations of rules of various Exchanges regulated by the Securities and Exchange Commission, specifically the rules of the American Stock Exchange, Inc., the Chicago Board Option Exchange, Inc., and the Midwest Exchange, Incorporated.[6] On the issue of the viability of a cause of action on the basis of a violation of such rules, this district has recently spoken per Newman, J.

> "The standard for the implication of federal civil liability from dealer or stock exchange rules was stated by Judge Friendly in *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir. 1966):
> The court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case *for implication would be*

strongest when the rule imposes an explicit duty unknown to the common law. 358 F.2d at 182.
Applying this standard to the very general rule at issue in *Colonial Realty*, which prohibited exchange members from engaging in conduct inconsistent with 'fair and equitable principles of trade,' Judge Friendly concluded that no private cause of action existed under that rule." *Plunkett v. Dominick & Dominick, Inc.*, 414 F.Supp. 885, 889–890 (D.Conn.1976).

The Court in *Plunkett* concluded that neither the "suitability" [of an investment to a particular investor] rule nor the "supervision" [of a brokerage firm over its representatives] rule should be the basis for damage actions in the federal courts. In *Plunkett*, the liability under the federal securities law as well as the common law of the State of Connecticut was broad enough to make it "superfluous to imply a cause of action under the . . . rules." *Plunkett, supra,* 414 F.Supp. at 890.

Turning to the case at bar, it is not appropriate to imply a federal liability for the alleged violations of the exchange rules cited by the plaintiffs.[7] In light of Judge Friendly's comments in *Colonial Realty*, it is the plaintiffs' burden to show that such liability should be imposed, looking to the nature of the particular rules and their place in the regulatory scheme. This burden is greater than that carried by the proponent of liability under a statute or an SEC regulation, and the propriety of liability has not been demonstrated by the plaintiffs in this case. In addition, the plaintiffs have not shown that the imposition of lia-

---

**6.** The plaintiffs allege that the following rules governing the conduct of securities dealers were violated: Rules 9.9 and 9.18(a) of the Chicago Board Options Exchange, Inc., Rules 923 and 924 of the American Stock Exchange, Inc., Amex Option Rules, and Article XLVIII Rules 5 and 6 of the Midwest Stock Exchange, Incorporated.

These rules allegedly forbid: (1) a salesman's recommendation of the purchase and sale of options contracts when he knows or should know that said purchases and sales are not suitable to his customers' accounts; (2) a salesman's writing of a call option contract when customers do not have a corresponding long

position in the underlying security and writing of a "naked" put option when he knows or should know that a trading "system" is so complex that his customers could not reasonably evaluate the additional risk involved; (3) a salesman's guarantee to his customers that there would be no loss in accounts following his trading "system"; and (4) a salesman's failure to operate discretionary accounts when he knows, or should know, that his customers have no idea of how his trading "system" worked.

**7.** See note 6 *supra*.

bility for violation of rules of the exchanges is necessary. In view of the defendant-salesman's exposure to liability under the securities laws as well as the common law of the State of Connecticut, such liability appears superfluous.[8] Accordingly, the claims based on Exchange rule violations are dismissed.

Plaintiffs also assert claims under the common law of the State of Connecticut. These consist of fraud, breach of fiduciary duty, breach of contract, negligence, conversion, and violation of the Uniform Securities Act, Conn.Gen.Stat. § 36–470 et seq. With respect to these claims, the Court will exercise its pendent jurisdiction.

The motion to dismiss is denied. SO ORDERED.

---

**8.** Evidence that the defendant-salesman violated the disciplinary rules of his profession might be admissible at trial to show negligence or fraud, both of which common law claims have been asserted by the plaintiffs.