650 F.2d 1376
 Blue Sky L. Rep. P 71,709
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MIAMI,
Plaintiff-Appellant, Cross Appellee,
v.
MORTGAGE CORPORATION OF the SOUTH, formerly known as Cobbs,
Allen & Hall Mortgage Company, Inc., an Alabama
Corporation, and Daniel B. Haralson,
Defendants-Appellees,
Mortgage Corporation of the South, etc., Defendant-Appellee,
Cross Appellant.
 No. 79-2141.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 July 23, 1981.
Rehearing Denied Aug. 27, 1981.
 William M. Acker, Jr., Birmingham, Ala., for appellant.
 Lange, Simpson, Robinson & Somerville, Henry E. Simpson, William G. Somerville, Jr., Birmingham, Ala., for Mortgage Corp.
 London, Yancey, Clark & Allen, James E. Clark, Birmingham, Ala., for Haralson.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before JONES, FAY and HENDERSON, Circuit Judges.
 HENDERSON, Circuit Judge:
 
 
 1
 First Federal Savings & Loan Association of Miami (hereinafter referred to as "First Federal") initiated this action against Mortgage Corporation of the South (hereinafter referred to as "MCS")[1] and Daniel B. Haralson, executive vice-president of MCS, on December 22, 1975 in the United States District Court for the Northern District of Alabama. The complaint alleged breach of contract, fraud and deceit under Alabama law, and violations of § 17 of the Securities Act of 1933, 15 U.S.C.A. § 77q, and Rule 10b-5, 17 C.F.R. § 240.10b-5. The district court granted summary judgment in favor of the defendants on all counts.[2] The issues on appeal are confined to the correctness of the district court's rulings on the federal securities claim. First Federal maintains that the district court erred in holding its 10b-5 cause of action barred by the applicable statute of limitations. In its cross-appeal, MCS challenges the court's determination that, for purposes of the summary judgment motion, the promissory notes underlying this suit constituted securities within the meaning of the federal securities acts. We agree with the district court's ultimate conclusion that the action is time-barred. Consequently, we do not reach the very substantial question of whether the notes here involved are within the purview of federal securities legislation.
 
 
 2
 The pertinent facts are set out in some detail in the district court's memorandum opinion. The suit basically concerns two loan transactions whereby First Federal agreed to provide the permanent financing for certain real estate developments in Birmingham, Alabama. On June 1, 1973, First Federal purchased from MCS a $2,300,000.00 promissory note, executed by developer Joseph Sandner, and the accompanying mortgage upon a 170-unit apartment complex known as Vestavia Park Apartments. First Federal purchased another promissory note and mortgage from MCS on July 30, 1973. This note, in the amount of $2,750,000.00, was executed by Horizon Inns & Management Corporation, a company of which Sandner was president. The mortgaged property was a new motel project known as the Red Carpet Inn.
 
 
 3
 MCS and Haralson purportedly misrepresented or failed to disclose material facts in connection with these transactions. In particular, they failed to divulge Haralson's personal ownership interests in the projects and the poor financial condition of the borrower, and they affirmatively misrepresented both the degree of completion and quality of construction of the projects.
 
 
 4
 We first note that, in accordance with our decision in White v. Sanders, 650 F.2d 627 (5th Cir. 1981), we find error in the district court's initial determination that the one-year statute of limitations applicable to common law fraud actions in Alabama governs the timeliness of First Federal's 10b-5 claim. However, the district court went on to conclude that the action would have been barred even under the two-year limitations period prescribed by § 8-6-19 of the Alabama "blue sky" law, the state statute of limitations which we deem to be the appropriate choice. The court found that "prior to December 22, 1973, the plaintiff had notice of the conduct complained of so as to bar its cause of action under the federal securities laws." 467 F.Supp. at 955. It is on this portion of the memorandum opinion that we concentrate.
 
 
 5
 In actions of this sort, the statute of limitations begins to run "when the aggrieved party has either actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." Vigman v. Community National Bank & Trust Company, 635 F.2d 455, 459 (5th Cir. 1981); Azalea Meats, Inc. v. Muscat, 386 F.2d 5 (5th Cir. 1967). In determining that the cause of action accrued more than two years prior to the filing of the complaint, the district court relied primarily on the deposition testimony of two of First Federal's loan officers. Robert P. Ford, the senior vice-president for loans, testified that the "best indication" First Federal had that Sandner's financial condition had been misrepresented or concealed was the fact that no payments were ever made on the mortgages. The first of the monthly mortgage payments was due on August 1, 1973, on the Vestavia project, and September 1, 1973 for the Red Carpet Inn. Obviously, by December of 1973, First Federal had reason to question the true nature of Sandner's financial posture.
 
 
 6
 The deposition testimony of Robert L. Richardson, the vice-president in charge of commercial loans, establishes that he and an attorney for First Federal were informed during an August 22, 1973 meeting in Miami that, contrary to the representations made at closing, the Vestavia project was nowhere near completion. This knowledge, too, should have prompted First Federal to make further inquiry. Accord, Hadra v. Herman Blum Consulting Engineers, 632 F.2d 1242, 1247 (5th Cir. 1980).
 
 
 7
 It appears that the only significant fact of which First Federal did not indeed have actual knowledge or notice prior to December, 1973 was Haralson's undisclosed interests in the projects. We doubt that the failure to discover this one aspect of the alleged fraud was sufficient to delay the running of the statute. Accord, Winkelman v. Blyth & Company, Inc., 518 F.2d 530, 531 (9th Cir. 1975). Moreover, when First Federal, through Richardson, finally undertook on March 18, 1974 to travel to Birmingham and inspect the subject property, it readily uncovered the substance of all major misrepresentations and non-disclosures which form the basis of this suit. On March 21, 1974, Richardson sent an interoffice memorandum to Ford in which he cataloged the discoveries and concluded, "It appears to me that Mr. Harrelson (sic), together with Mr. Sandner, had set out to defraud."
 
 
 8
 First Federal did not act diligently in waiting until March of 1974 to undertake an investigation. We agree with the district court's determination that, prior to December 22, 1973, First Federal possessed notice or knowledge that it had been defrauded and deceived which was sufficient to trigger the running of the two-year statute of limitations. For this reason, we affirm.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 At the time of the transactions giving rise to this suit, MCS was known as Cobbs, Allen & Hall Mortgage Company
 
 
 [2]
 The memorandum opinion is reported at 467 F.Supp. 943