**Felix S. KLOCK, Plaintiff,**

v.

**LEHMAN BROTHERS KUHN LOEB INCORPORATED, Michael Cavanaugh and Geoffrey Horner, Defendants.**

No. 83 Civ. 3889 (RJW).

United States District Court, S.D. New York.

March 30, 1984.

Nitkin, Alkalay Handler & Robbins, New York City, for plaintiff; J. Paul Robbins, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Lehman Bros. Kuhn Loeb Inc.; George M. Newcombe, David T. Eames, New York City, of counsel.

ROBERT J. WARD, District Judge.

In May 1978, Felix S. Klock opened an account with Lehman Brothers Kuhn Loeb, Inc. ("Lehman") and authorized Lehman to effect trades in securities and commodities options on his behalf. After suffering significant losses, Klock closed his account in

October 1979. Thereafter, on May 19, 1983, he filed this lawsuit, alleging that Lehman and two of its employees, Michael Cavanaugh and Geoffrey Horner, improperly and illegally managed his account and engaged in excessive transactions without his approval. Plaintiff claims that he incurred substantial losses as a result of defendants' conduct. He seeks damages for "churning," for common law fraud and for breach of contract.[1] Defendant Lehman moves pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P., for an order of this Court dismissing the complaint primarily on the ground that this action is time-barred by the applicable statute of limitations.[2] For the reasons hereinafter stated, Lehman's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is, and at all times material to this action was, a resident of Connecticut. Lehman is a member of the New York Stock Exchange and other exchanges, and is registered as a broker-dealer with the Securities and Exchange Commission. The individual defendants were registered representatives employed by Lehman, and are alleged to have acted at all times material to this action within the course and scope of their employment and with the express or apparent authority of Lehman. Jurisdiction over this action is said to arise from 28 U.S.C. §§ 1331, 1332 by reason of both the claims which arise under the laws of the United States and the diversity of citizenship of the parties.

According to the complaint, Cavanaugh telephoned plaintiff in May 1978 and induced him to open an account with Lehman. At that time, plaintiff entered into an agreement with Lehman pursuant to which Lehman was authorized, in consideration for receiving commissions from plaintiff, to effect securities and options contract transactions on plaintiff's behalf. Plaintiff alleges that from about May 1978 through about October 1979, defendants engaged in such transactions on plaintiff's behalf, without consulting plaintiff or obtaining his approval. During this time defendants allegedly exercised exclusive and total control over plaintiff's account. Plaintiff complains that defendants engaged in unnecessary and objectionable trades during this period in order to earn excessive commissions. As a result of these transactions, according to the complaint, plaintiff suffered losses in the amount of $895,600.57. Additionally, plaintiff was allegedly required to pay margin interest in 1978 and 1979 totalling $93,545.37, plus commissions during this period equal to $216,309.87.

The complaint was filed on May 19, 1983, and sets forth six Claims for Relief based

---

1. "Churning" has been said to occur "when a securities dealer abuses his customer's confidence for personal gain (e.g. to create commissions) by inducing transactions in the customer's account which are disproportionate to the size and character of the account." *Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *see also Ruskay v. Waddell,* 552 F.2d 392, 393 n. 2 (2d Cir.1977) *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977). Such activity has been held to be a deceptive device within section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, for which a private cause of action for damages will lie. *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *Newburger, Loeb & Co., Inc. v. Gross, supra; see generally* Note, *Churning by Securities Dealers,* 80 Harv. L.Rev. 869 (1967).

2. According to Lehman "[d]efendants Michael Cavanaugh and Geoffrey Horner apparently have not been served with process in this action." Memorandum of Defendant Lehman Brothers Kuhn Loeb Incorporated in Support of Its Motion to Dismiss the Complaint ("Lehman Memo.") at 1 n. 1 (July 11, 1983). Plaintiff does not address this assertion in his submissions. Neither Cavanaugh nor Horner (the "individual defendants") have appeared in this action, nor does the record contain any indication that the individual defendants have been served with process. In view of the disposition of the instant motion with respect to Lehman, the Court notes that even if plaintiff did properly serve the individual defendants, or legally could do so in the future, the claims against them appear to be governed by this decision. However, for purposes of clarity, the Court will continue to refer to "defendants" and to the "individual defendants" where appropriate.

on these allegations. The First Claim asserts a cause of action under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) ("section 10(b)")[3] and the rules and regulations promulgated thereunder. Secondly, plaintiff urges that defendants' conduct is actionable as common law fraud. The Third Claim seeks relief for Lehman's alleged breach of contractual obligations to (i) act with due care and diligence with respect to plaintiff's account; (ii) supervise its employees working on plaintiff's account and insure that they acted in plaintiff's best interests; and (iii) act in good faith towards plaintiff. Lehman is charged in the Fourth Claim for Relief with violations of section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a) ("section 20(a)") for breach of its duties as the "controlling person" of the individual defendants.[4] Lehman's conduct is alleged, in the fifth claim, to have violated Rule 405 of the Rules of the New York Stock Exchange ("NYSE Rule 405"), and, in the Sixth, to contravene Section 2 of Article III of the Rules of Fair Practice of the National Association of Securities Dealers (the "NASD Rule").

In a Seventh, and final, Claim for Relief, plaintiff seeks damages for breach of an alleged contract for the exchange of tax-free municipal bonds. Plaintiff asserts that, after opening his account with Lehman, he delivered to defendants, at defendants' request, tax-free municipal bonds valued at approximately $350,000.00 for the purpose of exchanging them for bonds of like quality but higher yield. Defendants allegedly breached this agreement by using these bonds as collateral for margin coverage, which use enabled defendants to purchase additional securities for plaintiff's account. As a result of the large losses in plaintiff's account, plaintiff claims he was forced to liquidate the bonds for $341,200.00, and to use this entire amount to pay off a portion of his margin debt. Accordingly, plaintiff seeks additional damages in the amount of $341,200.00 by reason of this alleged breach of contract.

Lehman has filed a motion for an order of this Court dismissing the complaint pursuant to Rules 12(b)(6) and 9(b), Fed.R. Civ.P. In support of the Rule 12(b)(6) ground, Lehman argues that plaintiff failed to file this lawsuit within the relevant statutory period, and that the complaint otherwise fails to state a claim upon which relief can be granted. Relying on Rule 9(b), Lehman also seeks dismissal of the fraud claims on the ground that plaintiff has failed to plead fraud with the requisite particularity.

## DISCUSSION

### A. The Fraud Claims

Lehman argues that plaintiff's claims under sections 10(b) and 20(a) of the Securities Exchange Act, as well as his claims for common law fraud are barred by the applicable statute of limitations. According to Lehman, this Court must apply the relevant statute of limitations of the state of plaintiff's residence, Connecticut. Lehman argues that the limitations period prescribed by the appropriate Connecticut statute is at most three years, and that the

---

**3.** Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—...

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules or regulations as the Commissioner may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**4.** That section provides:

(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

instant complaint was not filed within that time period.

The Securities Exchange Act prescribes no period of limitations for actions brought under sections 10(b) or 20(a). In such situations, federal courts refer to the relevant statute of limitations of the forum state, in this instance, New York. This reference must include application of New York's "borrowing statute," N.Y.Civ.Prac.Law § 202.[5] See, e.g., Cope v. Anderson, 331 U.S. 461, 465, 67 S.Ct. 1340, 1342, 91 L.Ed. 1602 (1947); Armstrong v. McAlpin, supra, 699 F.2d at 86, 89; Industrial Consultants, Inc. v. H.S. Equities, Inc., 646 F.2d 746, 747 (2d Cir.1981), cert. denied, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); Stull v. Bayard, 561 F.2d 429, 431 (2d Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); Arneil v. Ramsey, 550 F.2d 774, 779–80 (2d Cir. 1977); Sack v. Low, 478 F.2d 360, 365–68 (2d Cir.1973). Under that statute, a lawsuit instituted in New York by a non-resident based upon a cause of action accruing in a state other than New York is time-barred if the statute of limitations of either that state or New York had expired prior to the institution of the lawsuit.

■ In actions alleging fraudulent violations of the federal securities laws, the Second Circuit has consistently adopted state statutes of limitations for actions based upon common law fraud. See, e.g., Armstrong v. McAlpin, supra, 699 F.2d at 86; Stull v. Bayard, supra, 561 F.2d at 431; Klein v. Shields & Co., 470 F.2d 1344, 1346 (2d Cir.1972); Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341 (2d Cir.1971); Hoff Research & Development Laboratories, Inc. v. Philippine National Bank, 426 F.2d 1023, 1025 (2d Cir.1970). But see Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 409 (2d Cir.1975) (applying Texas law).[6] Ordinarily, then, the six-year limitations period established in N.Y. Civ.Prac.Law § 213(8) for "an action based on fraud" would apply to securities fraud suits brought in New York.[7] However, the Second Circuit has held repeatedly that New York's "borrowing statute," applies to an action for fraud based upon violations of the federal securities laws instituted in New York by a non-resident and that such an action accrues in the state of the plaintiff's residence. See, e.g., Armstrong v. McAlpin, supra 699 F.2d at 89; Industrial Consultants, Inc. v. H.S. Equities, Inc., supra, 646 F.2d at 747; Stafford v. International Harvester Co., 668 F.2d 142, 151 (2d Cir.1981); Robertson v. Seidman & Seidman, 609 F.2d 583, 586–87 (2d Cir. 1979); Stull v. Bayard, supra, 561 F.2d at 431; Arneil v. Ramsey, supra, 550 F.2d, at 779–80; Sack v. Low, supra, 478 F.2d at 365–66. The New York courts are in ac-

---

**5.** N.Y.Civ.Prac.Law § 202 provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

**6.** Other Circuits applying state statutes of limitations for general common law fraud in such cases include: S.E.C. v. The Seaboard Corporation, 677 F.2d 1301, 1308–09 (9th Cir.1982); Hackbart v. Holmes, 675 F.2d 1114, 1120 (10th Cir.1982); Sharp v. Coopers & Lybrand, 649 F.2d 175, 191–92 (3d Cir.1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); Wood v. Combustion Engineering, Inc., 643 F.2d 339, 342–346 (5th Cir.1981); Gaudin v. KDI Corp., 576 F.2d 708, 711–712 (6th Cir.1978). However, limitations periods prescribed in state

"blue sky" laws have been applied by these and other Circuits in several section 10(b) cases. See, e.g., Gurley v. Documation, Inc., 674 F.2d 253, 258–59 (4th Cir.1982); Herm v. Stafford, 663 F.2d 669, 679 (6th Cir.1981); First Fed. Sav. & Loan Ass'n of Miami v. Mortgage Corp. of the South, 650 F.2d 1376, 1378 (5th Cir.1981); Cahill v. Ernst & Ernst, 625 F.2d 151, 153 (7th Cir.1980); Morris v. Stifel, Nicolaus & Co., Inc., 600 F.2d 139, 140–146 (8th Cir.1979); Forrestal Village, Inc. v. Graham, 551 F.2d 411, 413 (D.C. Cir.1977).

**7.** N.Y.Civ.Prac.Law § 213(8) provides:

The following actions must be commenced within six years: ...
8. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

cord. *See, e.g. Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 296, 427 N.Y.S.2d 10, 14 (1st Dept.1980), *appeals dismissed,* 50 N.Y.2d 1021, 410 N.E.2d 745, 431 N.Y.S.2d 812 (1980); 51 N.Y.2d 970, 416 N.E.2d 1055, 435 N.Y.S.2d 720 (1980); *Prefabco Inc. v. Olin Corp.,* 71 A.D.2d 587, 588, 418 N.Y.S.2d 432, 433 (1st Dept.1979).

Plaintiff argues that these decisions are not controlling in this case, and that this Court should apply the six-year limitations period prescribed by N.Y.Civ.Prac.Law § 213(8). He contends that two of the agreements executed by the parties contain choice of law provisions which provide that New York law should govern. Plaintiff refers specifically to the "Customer's Margin Agreement," dated August 1, 1978, and the "Client's Option Agreement," dated October 20, 1978, each of which contain a clause providing that "[t]his agreement" shall be governed by the laws of the State of New York. According to plaintiff, these choice of law provisions nullify the effect of New York's "borrowing statute," and require this Court to apply the New York statute of limitations for common law fraud.

Regardless of whether these clauses, which are expressly applicable only to the particular agreements in which they are found, can be said to govern the entire relationship between the parties, it has been held in New York that a contractual choice of law provision governs only a cause of action sounding in contract. This very issue was addressed by the Appellate Division, First Department, in *Knieriemen v. Bache Halsey Stuart Shields, Inc., supra,* 74 A.D.2d at 293, 427 N.Y.S.2d at 12–13. In that case, the plaintiff, a resident of Louisiana, sued a New York brokerage firm to recover for alleged breaches of contract, negligence, fraud and churning in connection with plaintiff's commodity trading account. In determining that New York's "borrowing statute" applied to plaintiff's churning claim, the court rejected plaintiff's contention that the contractual provision selecting New York law as controlling mandated application of New York's statute of limitations. The court explained:

> The customer's agreement that plaintiff signed with the defendant when their business relationship commenced recited that "[t]his contract shall be governed by the laws of the State of New York". Relying at least in part on this recitation the trial court held that New York law should apply to all of the causes of action. The defendant maintains that Louisiana law should have been applied to the tort causes of action.
>
> That the parties agreed that their contract should be governed by an expressed procedure does not bind them as to causes of action sounding in tort (*see Fantis Foods v. Standard Importing Co.,* 63 A.D.2d 52, 406 N.Y.S.2d 763 revd. on other grounds, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122), and, as to the tort causes of action, there is no reason why all must be resolved by reference to the law of the same jurisdiction (*Babcock v. Jackson,* 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743, 191 N.E.2d 279).

*Id.*

■ In the instant case, plaintiff is, and was at all times material to this action, a resident of Connecticut. Whatever losses he claims to have suffered as a result of defendants' alleged fraudulent activities were thus suffered in Connecticut. To the extent plaintiff became a poorer man, he became a poorer Connecticut resident. *See Arneil v. Ramsey, supra,* 550 F.2d at 780. Accordingly, this Court holds that plaintiff's fraud claims have accrued in Connecticut, and must be governed by the shorter of the New York or Connecticut statute of limitations. *See* N.Y.Civ.Prac.Law § 202.

■ As indicated above, the relevant New York statute of limitations prescribes a six-year limitations period for securities fraud actions such as plaintiff's. N.Y.Civ. Prac.Law § 213(8). Connecticut's limitations period for claims based on common law fraud is three years, Conn.Gen.Stat. § 52–577, and, thus, is the controlling limi-

tations provision in this case.[8] In the instant case, plaintiff's cause of action accrued no later than October 1979, when he closed his account at Lehman, more than three years before the filing of this lawsuit. Accordingly, plaintiff's claims for relief for securities fraud under section 10(b) and for common law fraud are time-barred pursuant to the three-year limitations period established by Connecticut law.[9]

Plaintiff's cause of action against Lehman for "controlling person" liability under section 20(a) must also fall victim to Connecticut's statute of limitations. Liability under that section is "derivative liability in that it is predicated upon another person's violation of a different provision of the securities laws." *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324, 1341 (D.Del. 1983). Consequently, the statute of limitations that governs a claim under section 20(a) will be the same as the one applicable to the claim against the "controlled person." *See id.; Herm v. Stafford, supra,* 663 F.2d at 679. Accordingly, plaintiff's claims for relief pursuant to the federal securities laws and for common law fraud must be dismissed.

### B. Claims Under NYSE Rule 405 and the NASD Rule

The Fifth and Sixth Claims for relief seek damages for violations of NYSE Rule 405, the so-called "suitability" rule;[10] and the NASD rule, the "know your customer" rule.[11] Lehman argues that these two claims must be dismissed because there is no private right of action under these rules. The Securities Exchange Act does not expressly authorize a private right of action for violations of either of these rules. Consequently, plaintiff's claims can survive this motion to dismiss only if he can demonstrate that a private right of action has been impliedly created under these rules. Plaintiff has failed to make such a showing.

The question of whether a statute creates a private cause of action "either expressly or by implication is basically a matter of statutory construction." *Trans-*

---

**8.** That statute provides:
   No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

**9.** Although the Second Circuit has repeatedly held that the statute of limitations for claims of common law fraud applies to fraud actions based on violations of the federal securities laws, *see, e.g., Armstrong v. McAlpin, supra,* 699 F.2d at 86; *Stull v. Bayard, supra,* 561 F.2d, at 431, several cases suggest that the limitations period prescribed by state "blue sky" laws may be more appropriate. *See, e.g., Dandorph v. Fahnestock & Co.,* 462 F.Supp. 961, 963–64 n. 5 (D.Conn.1979) (applying two-year statute of limitations found in Conn.Gen.Stat. § 36–346(e), repealed and replaced by the Connecticut Uniform Securities Act, Conn.Pub.Act 77–482 § 21, § 30(c), in reliance on *Berry Petroleum Co. v. Adams &.Peck, supra,* 518 F.2d, at 409). However, it is unnecessary for this Court to determine whether these cases evidence the existence of a dispute within the Circuit as to this issue, and, if such a dispute exists, to attempt a resolution. In the instant case, plaintiff's fraud claims are time-barred under either Connecticut's three-year limitations period for claims for common law fraud or the two-year period established by the state's "blue sky" laws. *See Bache Halsey Stuart, Inc. v. Namm,* 446 F.Supp. 692, 697 (S.D.N.Y.1978).

**10.** NYSE Rule 405 provides in pertinent part:
   Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to
   (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.
   *Supervision of Accounts*
   (2) Supervise diligently all accounts handled by registered representatives of the organization.

**11.** Article III, section 2 of the Rules of Fair Practice of the National Association of Securities Dealers provides as follows:
   In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

*america Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). *See also Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1952, 60 L.Ed.2d 560 (1979); *National R.R. Passenger Corp. v. National Assoc. of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *Siebert v. The Conservative Party of New York State,* 724 F.2d 334, 337 (2d Cir.1983). As these cases have made clear, the existence of an implied private right of action rises or falls with the question of legislative intent. Absent a finding that the particular statute or rule at issue was promulgated with the intention of creating the right of action asserted, the court may not imply such a right. *See, e.g., Transamerica Mortgage Advisors v. Lewis, supra,* 444 U.S. at 15–16, 100 S.Ct. at 245; *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 568, 99 S.Ct. at 2485; *Cannon v. University of Chicago, supra,* 441 U.S. 688, 99 S.Ct. 1952.

█ In the instant case, plaintiff has offered this Court no basis upon which to conclude, contrary to substantial authority, that an implied right of action exists under NYSE Rule 405 or the NASD Rule. He has neither cited any authority in support of his contentions, nor addressed any of the arguments and precedents offered by Leh-

man in favor of the contrary result. In fact, this Court has been able to find no persuasive demonstration of congressional intent to create a federal right of action under the rules at issue.[12] On the contrary, the district court in *Colman v. D.H. Blair & Co., Inc.,* 521 F.Supp. 646 (S.D.N.Y.1981) listed the following factors which the court observed suggest the absence of such an intent:

(1) the statutory bases for the NYSE and NASD Rules, see 15 U.S.C. §§ 78f(b)(5) and (6) and 78o–3(b)(6) and (7), do not confer any rights or proscribe any conduct by exchange or association members;

(2) there is apparently no mention of this subject in the legislative history;

(3) there are several express provisions in the Act creating private remedies under specified circumstances, suggesting that the failure to provide for private actions for violation of exchange or association rules was not an oversight; and,

(4) the statutory scheme provides for self-regulation and enforcement by exchanges and associations, suggesting that Congress has selected this as the exclusive means of enforcement.

521 F.Supp. at 654 (citations omitted).[13]

Accordingly, this Court holds that plaintiff may not maintain an action for defend-

---

**12.** *See, e.g., Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 43 & n. 6 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978) (noting that "[t]here is no case decided by this Court" upholding "an implied private cause of action from violations of NYSE Rule 405 and the NASD constitution, Article III, Section 2."); *Juster v. Rothschild, Unterberg, Towbin,* 554 F.Supp. 331, 333 (S.D.N.Y.1983); *Picard v. Wall St. Discount Corp.,* 526 F.Supp. 1248, 1250–52 (S.D.N.Y.1981). *See generally, Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 182–183 (2d Cir.1966), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (although rules of securities exchanges impose a duty on members not to engage in conduct inconsistent with fair and equitable principles of trade, violation of these rules does not give rise to implied federal civil liability).

**13.** *See also Leist v. Simplot,* 638 F.2d 283, 296–97 n. 11 (2d Cir.1980) *aff'd on other grounds,*

456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); (no private right of action exists for violations of provisions like NYSE Rule 405). *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 679 (9th Cir.1980) (no private right of action for violation of either NYSE Rule 405 or the NASD Rule.) *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391, 394 (S.D.N.Y.1982) (no implied right of action under NYSE and NASD "know your customer" and "suitability" of investments rules.); *Picard v. Wall Street Discount Corp., supra,* 526 F.Supp. at 1250–52. (no implied right of action for violation of NYSE Rule 405); *Klitzman v. Bache Halsey Stuart Shields, Inc.,* 499 F.Supp. 255, 258–59 (S.D.N.Y.1980) (no private right of action for violation of NASD Rule); *Alvord v. Shearson Hayden Stone, Inc.,* 485 F.Supp. 848, 855–56 (D.Conn.1980) (no private right for investor under NYSE Rule 405 or NASD Rule); *Plunkett v. Dominick & Dominick, Inc.,* 414 F.Supp. 885, 889–90 (D.Conn.1976) (no

ants' alleged violations of NYSE Rule 405 and the NASD Rule, and that the Fifth and Sixth Claims for Relief must also be dismissed.

### C. The Third Claim for Relief

Plaintiff's Third Claim for Relief raises more troubling factual questions and legal issues. That claim alleges that defendants breached certain contractual obligations to plaintiff. Paragraph 21 of the complaint sets forth the specifics of this cause of action:

> Pursuant to the agreement entered into by plaintiff and Lehman Brothers, Lehman Brothers incurred a contractual obligation to plaintiff to (i) act with due care and diligence with respect to plaintiff's account; (ii) to supervise its employees working on plaintiff's account and insure that they acted in plaintiff's best interests; and (iii) act in good faith towards plaintiff.

Plaintiff contends that this claim is premised upon two distinct contractual obligations. Citing *Duker v. Duker*, 6 S.E.C. 386 (1939), plaintiff argues that defendants had been engaged by contract to act on behalf of plaintiff, and that inherent in this relationship was defendants' obligation to treat plaintiff fairly and to act toward him in good faith. Plaintiff asserts that, as a result of his relationship with defendants, defendants were subject to a second contractual obligation to act with due care. Included in this second duty, according to plaintiff, was Lehman's duty to properly supervise its employees. Because these duties allegedly originated from and circumscribed the contractual relationship between the parties, plaintiff contends that this claim is subject to New York's six-year statute of limitations "for an action upon a contractual obligation or liability express or implied." N.Y.Civ.Prac.Law § 213(2).[14]

Lehman counters with the position that the Third Claim for Relief should be dismissed for failure to state a remediable claim because the parties never entered into any agreement establishing the contractual duties of good faith or due care and proper supervision. Rather, Lehman argues this claim merely rephrases in the language of contractual breach plaintiff's churning claim, which this Court has determined is time-barred. Alternatively, Lehman contends, this "contract" claim actually pleads a cause of action sounding in tort for failure to exercise due care in rendering

---

private right of action for violation of NYSE Rule 405 or NASD Rule).

**14.** Plaintiff argues that all of his contract claims are governed by New York law by virtue of the choice of law provisions in the agreements executed by the parties. However, even if these provisions are held not to apply to these contract claims, plaintiff contends, New York law must still control under general conflicts of law principles because New York is the state with the most significant relationship to the action. *See Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 248 N.E.2d 576, 300 N.Y. S.2d 817 (1969); *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963). In support of this contention, plaintiff observes that New York is the place of business of the defendants, the place where the contracts were to be performed and the place of their breach. Moreover, plaintiff asserts, even if Connecticut law were held to apply to the Third Claim for Relief, the applicable statute of limitations would still be six years. *See Conn.Gen.Stat.* § 52–576.
Lehman responds that to the extent the parties did enter into a contract, as the Third Claim for Relief alleges, it was an oral agreement, and that claims pursuant thereto are subject to the three-year statute of limitations found in Conn. Gen.Stat. § 52–581. Although Conn.Gen.Stat. § 52–581 establishes a limitations period of only three years for actions based on oral contracts, that statute is applicable only to contracts that are executory in nature at the time the claim is presented. *See, e.g., Tierney v. American Urban Corp.*, 170 Conn. 243, 365 A.2d 1153 (1976); *Campbell v. Rockefeller*, 134 Conn. 585, 59 A.2d 524 (1948); *Hitchcock v. Union & New Haven Trust Co.*, 134 Conn. 246, 56 A.2d 655 (1947). In the instant case, because the performance or failure to perform any obligations by either plaintiff or defendants occurred well before the institution of this action, plaintiff's Third Claim for Relief is not premised upon a contract which is executory in nature. Thus, even if the alleged contract at issue were oral, and even if Connecticut law is applicable, this claim is subject to a six-year limitations period. Accordingly, this Court need not resolve at this juncture the question of whether, and under what theory, New York law governs with respect to plaintiff's contract claims.

professional services, and, thus, is barred by the three-year statute of limitations for negligence or professional malpractice. N.Y.Civ.Prac.Law § 214(4), (6).[15]

By casting the Third Claim for Relief in the language of contractual breach, plaintiff attempts to bring his cause of action within the six-year statute of limitations applicable to claims based on a contract. Lehman argues that this effort must fail because it is well-settled under New York law that a plaintiff can have but one recovery for a wrong, and thus "it is the gravamen or essence of the cause of action that determines the applicable Statute of Limitations." *European Am. Bank v. Cain*, 79 A.D.2d 158, 162, 436 N.Y.S.2d 318, 320–21 (2d Dept.1981). In the instant case, Lehman continues, the essence of plaintiff's cause of action is securities fraud, and thus, the limitations period applicable to all of plaintiff's claims should be the three-year period provided in Conn.Gen. Stat. § 52–577. Moreover, Lehman argues, even if this Court finds that the relationship between plaintiff and defendants was defined by contract, the Connecticut statute of limitations for common law fraud nevertheless applies because the duties allegedly breached are imposed by law rather than by contract. According to Lehman, under New York law, when a contract simply incorporates preexisting obligations independent of the contract, a court must apply the statute of limitations applicable to the "true nature" of the cause of action. Relying on *Adler & Topal, P.C. v. Exclusive Envelope Corp.*, 84 A.D.2d 365, 446 N.Y.S.2d 337 (2d Dept.1982) and *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F.Supp. 1314 (S.D.N.Y.1982), Lehman asserts that only when the duties at issue are expressly contained in the contract may a separate claim for breach of contract lie. Nominal contract actions grounded upon the breach of an agreement to properly perform professional services are subject to the three-year statute of limitations for actions based upon negligence or professional malpractice.[16]

---

**15.** Subsection (4) of N.Y.Civ.Prac.Law § 214 reads:

"The following actions must be commenced within three years: ...

"(4) an action to recover damages for an injury to property;"

Subsection (6) of that statute adds:

"(6) an action to recover damages for malpractice, other than medical malpractice...."

In Connecticut, the statute of limitations applicable to the failure to exercise due care, whether in ordinary circumstances or in the performance of professional services, is also three years. *See* Conn.Gen.Stat. § 52–577 (1975); *Anderson v. Watson*, 162 Conn. 245, 294 A.2d 278 (1972) (negligence); *Nickerson v. Martin*, 34 Conn.Sup. 22, 374 A.2d 258 (1976) (legal malpractice). However, the law of the forum state, New York, determines how a cause of action is characterized for statute of limitations purposes. *See Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 589, 374 N.E.2d 97, 99, 403 N.Y.S.2d 185, 187 (1978); *McCarthy v. Bristol Laboratories, Division of Bristol-Myers Co.*, 86 App.Div.2d 279, 283, 449 N.Y.S.2d 280, 283 (2d Dep't 1982).

**16.** Lehman's observation that plaintiff has failed to offer any persuasive authority upon which to imply a separately actionable obligation of good faith, while accurate, is nonetheless not dispositive of that issue. It is well-settled law in New York that "every contract contains the implied requirement of good faith and fair dealing." *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir.1977), *appeal after remand* 573 F.2d 733 (2d Cir.1978) *rehearing*, 590 F.2d 433 (2d Cir.1978), *aff'd* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). *See also Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980); *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 923 n. 8 (2d Cir.1977); *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir.1975); *T.G.I. East Coast Const. Corp. v. Fireman's Fund Ins. Co.*, 534 F.Supp. 780, 782 (S.D.N.Y.1982); *Candid Productions, Inc. v. International Skating Union*, 530 F.Supp. 1330, 1334 (S.D.N.Y.1982); *Reprosystem, B.V. v. SCM Corp.*, 522 F.Supp. 1257, 1280 (S.D.N.Y. 1981), *rev'd on other grounds*, 727 F.2d 257 (2d Cir.1984); *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*, 470 F.Supp. 1308, 1316 (N.D.N.Y.1979); *Rowe v. Great Atl. & Pac. Tea Co., Inc.*, 46 N.Y.2d 62, 68, 385 N.E.2d 566, 569, 412 N.Y.S.2d 827, 830; (1978); *Gordon v. Nationwide Mutual Ins. Co.*, 30 N.Y.2d 427, 437, 285 N.E.2d 849, 854, 334 N.Y.S.2d 601, 608 (1972), *cert. denied*, 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973); *Van Valkenburgh Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45, 281 N.E.2d 142, 144, 330 N.Y.S.2d 329, 333 (1972), *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972); *De Laurentiis v. Cinematografica de las Americas, S.A.*, 9 N.Y.2d 503, 509, 174 N.E.2d 736, 738, 215 N.Y.S.2d 60, 63 (1961); *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933). Thus, if plaintiff successfully establishes the existence of a contract in this case, this Court

Historically, the New York courts have applied the "essence of the action" rule to resolve conflicts between the torts and contracts statutes of limitations. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co., supra* 545 F.Supp. at 1363; *Union Bank of Switz. v. HS Equities, Inc.,* 423 F.Supp. 927, 929 (S.D.N.Y.1976); *Western Elec. Co. v. Brenner,* 41 N.Y.2d 291, 293–94, 360 N.E.2d 1091, 1093, 392 N.Y.S.2d 409, 410–11 (1977); *Brick v. Cohn-Hall-Marx Co.,* 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937); *Corash v. Texas Co.,* 264 A.D. 292, 295, 35 N.Y.S.2d 334, 338 (1st Dept.1942). However, recently, the New York Court of Appeals has advocated blanket application of this rule only in personal injury cases, and has recognized that different policy considerations are involved in actions for damage to property or pecuniary interests. *See Sears, Roebuck & Co. v. Enco Assoc., Inc.,* 43 N.Y.2d 389, 372 N.E.2d 555, 401 N.Y.S.2d 767 (1977); *Matter of Paver & Wildfoerster (Catholic High School Assn.),* 38 N.Y.2d 669, 345 N.E.2d 565, 382 N.Y.S.2d 22 (1976).

In *Sears, Roebuck & Co. v. Enco Assoc., Inc., supra,* a firm of architects contracted with the plaintiff to design plans for and supervise construction of parking ramps at one of the plaintiff's stores. After cracks appeared in the ramps, the plaintiff sued the architects for negligence, breach of implied warranty and breach of a contractual obligation to exercise proper professional care. The lower courts granted defendant's motion to dismiss the action as untimely, concluding that the claims for breach of contract and warranty actually alleged a cause of action for professional malpractice and were barred by the applicable three-year statute of limitations. The New York Court of Appeals reversed and applied the six-year limitations period for breach of contract actions, although it limited damages to the contract measure of recovery. The court held that when a plaintiff complains of damage to his property or pecuniary interests, the contract peri-

must find that the parties were bound by the implied obligation of good faith and fair deal-

od of limitations governs regardless of how the asserted liability is classified or described, as long as "all liability alleged in th[e] complaint had its genesis in the contractual relationship of the parties." *Id.,* 43 N.Y.2d at 396, 372 N.E.2d at 558, 401 N.Y.S.2d at 771 (citations omitted).

The significance of this holding was made more explicit in *Video Corp. of Am. v. Frederick Flatto Assoc., Inc.,* 58 N.Y.2d 1026, 448 N.E.2d 1350, 462 N.Y.S.2d 439 (1983), in which an insurance broker was sued on negligence and breach of contract theories for failure to procure adequate insurance coverage. Although the case involved no written contract, the court declared that "an action for failure to exercise due care in the performance of a contract insofar as it seeks recovery for damages to property or pecuniary interests recoverable in a contract action is governed by the six-year contract Statute of Limitations (CPLR 213, Subd. 2)." *Id.* In *Video Corp.,* the Court of Appeals expressly rejected the restrictive manner in which three departments of the Appellate Division had interpreted *Sears.* All three cases had concluded that the *Sears* holding applied to only written contracts containing explicit promises to achieve a specific result. *See Brainard v. Brown,* 91 A.D.2d 287, 458 N.Y.S.2d 735 (3d Dept.1983); *Video Corp. of Am. v. Frederick Flatto Assoc., Inc.,* 85 A.D.2d 448, 448 N.Y.S.2d 498 (1st Dept. 1982); *Adler & Topal, P.C. v. Exclusive Envelope Corp.,* 84 A.D.2d 365, 446 N.Y. S.2d 337 (2d Dept.1982).

In the most recently reported application of the *Sears* and *Video Corp.* holdings, *Baratta v. Kozlowski,* 94 A.D.2d 454, 464 N.Y.S.2d 803 (2d Dept.1983), the plaintiff sued a bank, the bank's holding company and the bank's president for damages resulting from the embezzlement by the bank's president of bonds invested with the bank by the plaintiff. Asserting that the "essence" of the plaintiff's action sounded in tort, the defendants moved to dismiss

ing.

the complaint, which included claims based upon both tort and contract theories of recovery, on the ground that the statute of limitations applicable to tort claims had expired prior to the institution of the lawsuit. Relying on the holdings in *Sears* and *Video Corp.*, the court held that the "essence of the action" rule does not control where the claim alleges damages to pecuniary interests.[17] The court concluded that the complaint sufficiently alleged the creation of a bailment contract between the parties, and that the statute of limitations for contract actions applied. As the court explained:

> Since the claimed damage is to property or pecuniary interests and the asserted liability not only relates in part to an alleged failure to use due care, but also "had its genesis in the contractual relationship of the parties" (*Sears, Roebuck v. Enco Assoc.*, 43 N.Y.2d 389, 396, 401 N.Y.S.2d 767, 372 N.E.2d 555, *supra*), application of the six-year Statute of Limitations to the claims against the Bank is mandated by *Sears* and *Video Corp.*

*Baratta v. Kozlowski, supra*, 94 A.D.2d at 463, 464 N.Y.S.2d at 809. However, as in *Sears*, the plaintiff was limited to the contract measure of damages.

In the instant case, plaintiff seeks damages for injury to his pecuniary interests. He alleges that such damages resulted from defendants' failure to act with due care and that such duty had its genesis in the contractual relationship between the parties. Upon this pleading, this claim for relief is subject to the six-year statute of limitations applicable to breach of contract claims in New York. *See Video Corp. of*

*Am. v. Frederick Flatto Assoc., Inc., supra*, 58 N.Y.2d 1026, 448 N.E.2d 1350, 462 N.Y.S.2d 439; *Sears, Roebuck & Co. v. Enco Assoc., Inc., supra*, 43 N.Y.2d 389, 372 N.E.2d 555, 401 N.Y.S.2d 767; *Baratta v. Kozlowski, supra*, 94 A.D.2d 454, 464 N.Y.S.2d 803.

Lehman asserts that this claim cannot stand because no such contract existed and, therefore, that defendants breached no contractual duties to plaintiff. However, because Lehman raises this argument on a motion to dismiss the complaint, this Court must "accept as true all material factual allegations of the complaint and construe its terms in favor of the plaintiff." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52 at 57 (2d Cir.1984); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). This construction of the pleadings must control even if this Court were to conclude that the possibility of recovery on plaintiff's Third Claim for Relief is remote.

After construing the contract claim in this manner, this Court cannot conclude that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [t]his claim which will entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). Accordingly, this claim may not be dismissed at this time. However to ultimately succeed on this claim, plaintiff will have to establish both that the alleged contractual relationship existed between the parties and that "all liability alleged in [the] complaint had its genesis in" this relationship. *Sears, Roebuck & Co. v. Enco Assoc., Inc., supra*, 43

17. The court observed:

> *Video Corp.* seems to draw a bright line which will ease selection of limitations periods for property or pecuniary interest cases, a process previously described as a "snarl of utter confusion" (see Prosser, The Borderline of Tort and Contract, in Prosser, Selected Topics on the Law of Torts, p. 434). The *Video Corp.* result is also consonant with Siegel's observation that "it does seem wrong to restrict a plaintiff, injured in effect by two wrongs, to the shorter of their time periods" (Siegel, N.Y. Practice, § 37, p. 40), for a wrongdoer should

> not be permitted to allege his own wrong for the purpose of defeating an action on the basis of the Statute of Limitations (see *Ganley v. Troy City Nat. Bank*, 98 N.Y. 487, 494; Angell, Limitations [5th ed.], § 72; 1 Wood, Limitations of Actions [3rd ed.], § 57b). Those who seek recompense for injury to property or pecuniary interests can now select a remedy less likely to be frustrated by time restrictions, provided they are willing to limit themselves to contractual damages.

*Baratta v. Kozlowski, supra*, 94 A.D.2d at 462–63, 464 N.Y.S.2d at 809.

N.Y.2d at 396, 372 N.E.2d at 558, 401 N.Y.S.2d at 771–72. Of course, if plaintiff prevails on this claim, his recovery will be limited to the contract measure of damages. *See id.; Baratta v. Kozlowski, supra* 94 A.D.2d at 463, 464 N.Y.S.2d at 809.

### D. The Municipal Bonds Claim

Plaintiff's Seventh Claim for Relief alleges that the parties entered into a contract for the exchange of plaintiff's tax-free municipal bonds which were valued at approximately $350,000.00. The complaint asserts that defendants convinced plaintiff to deliver the bonds to them for the express purpose of exchanging the bonds for bonds which were similar but which yielded a greater return. Paragraph 39 of the Complaint alleges that "[d]efendants breached the agreement entered into by the parties concerning the bonds, by using the bonds as collateral for margin coverage." Recognizing that this claim may be less than clear, plaintiff offers the following explanation:

> [The Seventh Claim for Relief] alleges that defendants breached their contractual undertaking (i) to exchange plaintiff's municipal bonds for like quality bonds yielding a higher return and (ii) to maintain the bonds safely, so that they could help finance plaintiff's retirement. Rather than carrying out that agreement, defendants used the bonds as collateral for margin coverage.

**18.** Lehman does not indicate whether it believes the relevant New York or Connecticut statute of limitations should apply. However, since the limitations period for actions based on negligence or professional malpractice is three years under the laws of both of these states, it is unnecessary for the Court to resolve this issue. *See* Conn.Gen.Stat. § 52–577; N.Y.Civ.Prac.Law § 214(4), (6). *See also supra* n. 14.

**19.** In a footnote in its memorandum of law, Lehman observes that plaintiff's purported oral contract claims would also appear to run afoul of the Statute of Frauds of Connecticut … and New York …" Lehman Memo. at 17 n. 1. This Court does not agree. The relevant Statute of Frauds of both of these states apply only when the alleged contract could not be performed within one year, even if performance within such time is nearly impossible. *See Doyle Dane Bernbach, Inc. v. Avis,* 526 F.Supp.

[Plaintiff's] Reply Memorandum in Opposition to [Defendant's] Motion to Dismiss at 4 (Sept. 26, 1983).

Lehman argues that this claim should be dismissed for failure to state a remediable cause of action for several independent reasons. First, as Lehman interprets this claim, it alleges that plaintiff's tax-free municipal bonds were improperly made subject to margin coverage and were ultimately liquidated as collateral, resulting in a loss to plaintiff. Lehman contends that such allegations do not sound in contract, but, rather, assert only a cause of action in tort for failure to exercise due care in managing plaintiff's account. Accordingly, Lehman maintains, this claim is barred by the three-year statute of limitations applicable to negligence or malpractice actions.[18]

Alternatively, Lehman argues that even if this claim sufficiently alleges the existence of a contract for the exchange and safe keeping of plaintiff's bonds, that agreement constitutes an oral modification of the Customer's Margin Agreement executed by the parties. However, this argument continues, such oral modifications are void by reason of both the parol evidence rule and the express provision in the Customer's Margin Agreement limiting modifications of that agreement to signed writings.[19]

In response, plaintiff argues that the Seventh Claim for Relief alleges the exist-

117, 120 n. 1 (S.D.N.Y.1981); *Dawson v. G. Malina, Inc.,* 463 F.Supp. 461, 472 (S.D.N.Y. 1978); *Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.,* 43 N.Y.2d 921, 922, 374 N.E.2d 625, 626, 403 N.Y.S.2d 732, 733 (1978); *Freedman v. Chemical Construction Corp.,* 43 N.Y.2d 260, 265, 372 N.E.2d 12, 15, 401 N.Y.S.2d 176, 180 (1977). The crucial test for determining whether an alleged contract is within the Statute of Frauds is whether "by its terms" the agreement is not to be performed within one year. *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.,* 22 N.Y.2d 171, 175–76, 239 N.E.2d 189, 190–91, 292 N.Y.S.2d 86, 88–89 (1968) (and citations thereat). In the instant case, defendants could have properly exchanged plaintiff's bonds for similar bonds yielding a greater return within one year and, thus, the alleged contract was not within the Statute of Frauds of either state.

ence of a contract for the exchange of plaintiff's bonds, independent of the alleged agreement pursuant to which defendants were to effect securities and options trades on plaintiff's behalf. Plaintiff contends that, rather than merely rephrasing in contract terms a tort cause of action for failure to exercise due care, this claim presents a separate claim for a specific breach of contract. Consequently, plaintiff asserts, this claim is subject to the six-year limitations period applicable to claims for breach of contract. *See* N.Y.Civ.Prac.Law § 213(2).

Additionally, plaintiff maintains, this claim is not barred by the parol evidence rule or the provisions of the Customer's Margin Agreement. The parol evidence rule applies only to prior or contemporaneous understandings which alter an integrated written agreement. However, plaintiff asserts, the parties executed the bond exchange contract after plaintiff opened his trading accounts with defendants. Moreover, plaintiff contends that the bond exchange contract did not refer to and was in no way connected with these trading accounts. In short, plaintiff argues that the alleged bond exchange agreement neither modifies nor contradicts any agreements made with respect to plaintiff's trades, and thus is not barred by the terms of such agreements or the parol evidence rule.

This Court holds, as it did with respect to the Third Claim for Relief, that to the extent that plaintiff's Seventh Claim for Relief alleges the existence of a separate contract for the exchange of tax-free municipal bonds, any claims for breach of such contract are subject to a six-year statute of limitations. However, to succeed upon this claim, plaintiff must establish both that defendants breached their obligations under this contract and that claims based on these obligations are not barred by the parol evidence rule or by the terms of prior agreements executed by the par-

ties. At this preliminary stage of litigation, this Court is unwilling to conclude that it is "beyond doubt" that plaintiff cannot sustain this burden. *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102. *See also Scheuer v. Rhodes, supra,* 416 U.S. at 236, 94 S.Ct. at 1686. Accordingly, this Court may not dismiss plaintiff's Seventh Claim for Relief.

### CONCLUSION

To summarize, plaintiff's First, Second and Fourth Claims for Relief seeking damages for violations of section 10(b) and 20(a) and for common law fraud, respectively, were not filed before the expiration of the applicable statute of limitations, and are hereby dismissed. Plaintiff's Fifth and Sixth Claims for Relief praying for damages for violations of NYSE Rule 405 and the NASD Rule fail to state a claim for which a private right of action exists, and they too are dismissed. The Third and Seventh Claims for Relief alleging breaches of several contractual obligations are subject to a six-year limitations period. These latter two causes of action present claims upon which relief may conceivably be granted, and they are not dismissed.

Accordingly, Lehman's motion to dismiss the complaint is granted insofar as it relates to the First, Second, Fourth, Fifth and Sixth claims for relief. In all other respects Lehman's motion is denied.[20]

Lehman is directed to file its answer within ten (10) days of the date of this decision. Discovery in this action is to be completed by May 31, 1984 and a joint pre-trial order to be filed by the parties by June 28, 1984.

It is so ordered.

---

**20.** Lehman's motion was premised both on plaintiff's asserted failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P., and on his purported failure to plead fraud with particularity, Rule 9(b),

Fed.R.Civ.P. In view of the Court's disposition with respect to the First, Second and Fourth Claims for Relief, this latter aspect of Lehman's motion is denied as moot.