T.G.I. EAST COAST CONSTRUCTION
CORP., Plaintiff,

v.

FIREMAN'S FUND INSURANCE COM-
PANY and National Preferred Risks,
Inc., Defendants.

and

Titan Group, Inc., Additional Defendant
On Counterclaim.

FIREMAN'S FUND INSURANCE COM-
PANY, Third-Party Plaintiff,

v.

COTRONEO & COLLETTI CONCRETE,
INC., Colletti & Laguidara, Inc., individ-
ually and as co-venturers doing business
under the name of Cotroneo & Colletti
Concrete, Inc. and Colletti & Laguidara,
Inc., a Joint Venture, Vincent Colletti,
and Orlando Cotroneo, Third-Party De-
fendants.

No. 80 Civ. 1120(MEL).

United States District Court,
S. D. New York.

March 26, 1982.

M. Carl Levine, Morgulas & Foreman, New York City, for plaintiff; Jerrold Morgulas, New York City, of counsel.

Hart & Hume, New York City, for defendant Fireman's Fund Ins. Co.

Ross & Cohen, New York City, for third party defendants; Allen Ross, New York City, of counsel.

LASKER, District Judge.

This action arises from a contract between T.G.I. East Coast Construction Corp. ("TGI"), a general contractor, and the Town of Parsippany Troy-Hill ("the town") for construction of a wastewater treatment plant. The counterclaimants and third-party defendants, Cotroneo & Colletti Concrete, Inc., Colletti & Laguidara, Inc., Vincent Colletti and Orlando Cotroneo ("C & C") were subcontractors on the contract.

No sooner had work begun on the project than the New Jersey Environmental Protection Agency ordered it halted. A stop-order which remained in effect for approximately six months was then issued by the town. The delay caused by the stop-order appears to have been extremely costly for all concerned, including C & C. At one point, TGI loaned C & C $300,000, and later $125,000 to keep afloat. At the time of the second loan, the "memorandum of understanding" which is the subject of this motion was entered by the parties.

Pursuant to the original contract, TGI presented claims to the town for an adjustment to the contract price for costs incurred by TGI and by all of the subcontractors as a result of the stop-order. Having failed to reach a settlement of those claims, TGI filed suit in federal court in New Jersey against the town.

In the meantime, C & C's financial problems proved too much for it, and it defaulted on its performance. TGI filed this action against C & C, alleging that C & C's default required TGI to take over the work that C & C had contracted to do at a cost to TGI of more than $2.5 million. The action between TGI and the town was resolved by a settlement.

The contract between TGI and C & C provides that TGI's sole obligation to C & C with respect to C & C's claims against the town is to present C & C's claims to the town. See Agreement of August 16, 1977, Exhibit A to Counterclaim, ¶ 24d: "If the Contractor has made claims to the Owner's representatives, it shall have fulfilled its obligations to the Subcontractor." The memorandum of understanding modifies that provision to the extent that TGI therein agreed to litigate C & C's claim if the town "determines the [C & C] claim is worthless."

C & C has filed a counterclaim alleging that TGI breached the memorandum of understanding. TGI now moves for summary judgment pursuant to Fed.R.Civ.Pr. 56 on the counterclaim.

C & C contends that the contract provision referred to above imposed a duty, such as is implied by law in all contracts, on TGI to make a good faith effort to recover C & C's claims from the owner. C & C's affidavits indicates its reasons for alleging that such a duty was not fulfilled, the most significant of which is set forth in the supplemental affidavit of Vincent Colletti, sworn to October 21, 1981, ¶ 7. Colletti points out that in the report of the town's consulting firm, Hill International, Inc. ("Hill"), there is at least a substantial suggestion that Hill found that certain of C & C's losses were not attributable to the town because they were at least in part the fault of TGI. (Exhibit J to the Affidavit of Lawrence Skaller at 6–9). In addition, C & C has submitted two TGI intra-office memoranda in which Lawrence Skaller, the President of TGI, states that the C & C claim might be worth $720,000 and $900,000, respectively, while the actual amount allocated to C & C was $585,778. (Exhibits A and B to Affidavit of Vincent Zichello).

C & C also contends that there are issues of material fact as to the meaning of certain words in the contract and the memorandum of understanding. In particular, C & C alleges that the statement in the contract that TGI has the "absolute right to determine what settlement, if any, should be made" must be interpreted in light of the more than fifteen year course of dealing of the parties during which C & C's claims were always settled with C & C's consent. (Affidavit of Vincent Colletti, ¶ ¶ 15, 25). Second, C & C asserts that the term "equitable" as used in the contract provision allowing TGI to make such allocation as it deems "equitable" in the event no specific allocation is made in the settlement with the town is subject to the same limitation of good faith discussed above with respect to the TGI's collection attempts. Third, C & C asserts that its agreement in the memorandum of understanding to accept the "Owner's decision" as to the value of its claim implies a decision which is disclosed in its entirety to C & C, including the supporting documents relied on. C & C asserts that it has not been provided that information, and that it should not be compelled to accept the decision in its absence. Finally, C & C contends that the word "worthless" in the provision of the memorandum that TGI will litigate if the town deems C & C's claim to be worthless means worth an unreasonably low amount, not worth nothing.

TGI responds that it pursued C & C's claims vigorously with the town. Also, it asserts that the words in the subcontract and memorandum of understanding are unambiguous, and therefore their interpretation does not present any genuine issues of fact. In addition, TGI argues that it has been completely forthright in providing C & C with necessary documentation underlying the town's decision.

\* \* \*

■ There is implied in all contracts a covenant of good faith and fair dealing. *Van Valkanburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142 (1972). It follows that C & C's agreement to accept whatever settlement the town offered to TGI in respect of C & C's claim imposed on TGI a duty to make a good faith effort to present C & C's claim to the town in a fair and serious manner. The materials presented by C & C, particularly the possibility of a conflict of interest, raise a genuine issue as to whether TGI carried out its duty to act in good faith. For the same reason, C & C is entitled to attempt to prove that its agreement to accept the town's decision implied a responsibility on the part of TGI to allow C & C access to available materials explaining that decision, and there is a genuine dispute as to whether C & C has been provided with those materials. Similarly, C & C's agreement to accept whatever allocation TGI deemed "equitable" in the event no specific allocation was made by the town imposed a duty on TGI to make an equitable allocation among itself and its subcontractors. C & C is entitled to introduce evidence to support its claim that the allocation was not equitable.

■ The meaning of the word "worthless," however, does not present a genuine question of fact. Webster defines it as it is used in ordinary speech: "lacking value or material worth . . . of no value, use, or profit." Webster's Third International Dictionary (1961). Perhaps a different question would be presented if, out of C & C's approximately $3.5 million claim, it had been allocated, say, $5,000. However, in this case, in which C & C was offered $585,778, whatever ambiguity is inherent in the word worthless, C & C's claim was not deemed worthless by the town. While "[t]he parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting a contract whose provisions are not wholly unambiguous," *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975), there is no right to present evidence on the meaning of a contract term which is clear on its face, as the word worthless is in the circumstances of this case.

Accordingly, TGI's motion for summary judgment is denied except as to the meaning of the word "worthless" as used in the July, 1979 memorandum of understanding.

It is so ordered.