**NOVA CASUALTY COMPANY, for itself and as assignee of the claims of Cole Mechanical Corp., Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant and Third–Party Plaintiff**

v.

**AWL Industries, Inc., Third–Party Defendant and Fourth–Party Plaintiff**

v.

**Dormitory Authority of the State of New York, Fourth–Party Defendant.**

No. 06–CV–3254 (CM).

United States District Court, S.D. New York.

March 19, 2008.

Michael Roy Galina, Michael P. Giampilis, Rabinowitz & Galina, Esqs., Mineola, NY, Thomas David Czik, Thomas D. Czik, Esq, Roslyn, NY, for Plaintiff.

Mark Steven Gamell, Torre, Lentz, Gamell, Gary & Rittmaster, LLP, Jericho, NY, for Defendant and Third-Party Plaintiff.

Ira Martin Schulman, Consuelo Alden Vasquez, Mazur, Carp & Rubin, P.C., New York, NY, for Third-Party Defendant and Fourth-Party Plaintiff.

Steven C. Brown, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Fourth-Party Defendant.

**DECISION AND ORDER GRANTING (1) DASNY'S MOTION FOR SUMMARY JUDGMENT AND (2) LIBERTY AND AWL'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT**

McMAHON, District Judge:

AWL Industries, Inc. ("AWL"), as contractor, entered into a written agreement with the Dormitory Authority of the State of New York (the "DASNY") for the construction of a public improvement project in New York, New York. The Complaint alleges that AWL wrongfully terminated a subcontractor, Cole Mechanical Corp. ("Cole"), and failed to pay Cole for certain contract and extra work for the project, as well as certain labor and material costs. Plaintiff Nova Casualty, Cole's surety, was forced to complete the work of the Subcontract following Cole's termination. Nova asserted a claim for damages in the amount of $3,123,258.33 against Labor and Material Payment Bond No. 015011590, issued by Liberty Mutual Insurance Company ("Liberty"), as surety for AWL.

Liberty then filed a third-party complaint against AWL for indemnification. AWL filed a fourth-party complaint against DASNY for indemnification.

The fourth-party complaint alleges that, to the extent that AWL is held liable to Liberty on account of any damages sought in the third-party complaint, said damages were the result of the delays, acts, omissions or other breaches caused by DASNY.

Before this Court is (1) a motion for summary judgment by Fourth–Party Defendant DASNY, seeking dismissal of the Fourth–Party Complaint, and (2) a cross-motion for partial summary judgment brought by Defendant Liberty and Fourth–Party Plaintiff/Third–Party Defendant AWL, seeking dismissal of Nova's equitable adjustment claim against Liberty.

Both motions are granted.

## I. Background

### A. Parties

Plaintiff Nova Casualty is a property and insurance company domiciled in New York, with its headquarters in Buffalo, New York.

Defendant/Third–Party Plaintiff Liberty is a mutual insurance company domiciled under the laws of Massachusetts, with its principal place of business in Boston, Massachusetts.

Fourth–Party Plaintiff/Third–Party Defendant AWL is a corporation organized under the laws of New York, with its principal place of business in Brooklyn, New York.

Fourth–Party Defendant DASNY is a public benefit corporation, organized and existing under the Public Authorities Law of the State of New York. It is headquartered in Albany, New York, and has an office in New York, New York.

### B. Facts

The following facts are not in dispute.

On or about September 19, 2002, AWL, as contractor, entered into a written agreement (the "Prime Contract") with DASNY for the construction of a public improvement project in New York, New York, specifically, HVAC work at Bellevue Hospital Center Ambulatory Care Building (the "Project"). In connection with the Project, AWL, as contractor, and Liberty, as surety, executed a labor and material payment bond (the "Payment Bond"). Under the terms of the Payment Bond,

Liberty agreed to pay for labor and/or material furnished in connection with the Project if AWL failed to make such payment.

In furtherance of the Prime Contract, AWL entered into a written agreement (the "Subcontract") with Cole, dated March 13, 2003, pursuant to which Cole agreed to perform certain mechanical work at the Project. In connection with the Subcontract, Nova, as surety, and Cole, as subcontractor, executed a subcontract performance bond (the "Subcontract Performance Bond"). Cole began work on the subcontract.

By a letter dated August 19, 2004, AWL notified Cole that it was in default, having breached its obligations under the Subcontract, and demanded that Cole's surety, Nova Casualty Company ("Nova"), complete Cole's work on the project. (Czik Aff. Ex. B.) At the time it terminated Cole, AWL allegedly had not paid Cole for certain contract and extra work for the Project, totaling $75,817.43.

Nova retained Cole (the terminated subcontractor) to return to complete its work on the Project. Cole worked on the project until December 28, 2004, when Nova hired a new subcontractor to replace Cole.

Pursuant to the Prime Contract, AWL's work was originally supposed to be completed by July 10, 2004. Soon after Cole began work on the subcontract, it became apparent that the Project would not be completed on time, and AWL executed numerous time extension orders, known as "change orders," which were approved by DASNY. The first change order (Change Order No. 11) was executed in February 2004 (Pav.Ex.3), and the second (Change Order No. 12) was executed in June 2004 (Pav.Ex.4). Both of these change orders contained a standard printed waiver that stated:

In accepting and executing this change order the contractor, its heirs, execu-

tors, administrators, successors, and assigns hereby release and forever discharge the Dormitory Authority of the State of New York, its successors, and assigns from any and all actions, causes of action, claims and demands whatsoever in law or in equity which the contractor ever had, now has or may have against the Dormitory Authority of the State of New York in any way arising out of this change.

All of the subsequent change orders executed between DASNY and AWL contained this standard printed waiver.

In a draft version of the third time extension, there appears a handwritten note, written by a DASNY representative or agent, following the standard waiver language quoted above. It stated, "The amount and the additional time is full compensation full settlement for any additional claims." (Pav.Aff.Ex.5.) There was no agreement to this modification, however, and the final version (Change Order No. 29) did not contain this additional language—it only contained the standard printed waiver that appeared in the previous change orders. (Pav.Aff.Ex.6.)

However, this additional waiver language made it into Change Order No. 100, executed in January 2005 (after Cole had left the Project). It appears in the text, several paragraphs above the standard printed waiver. (Thiersch Aff. Ex. B.) It states: "Please note that AWL Industries has waived all rights to any type of compensation for supervision & waived all rights for any additional claims as this extension of time is for Zero Dollars ($0.00)." (Id.) This change order related to the completion of the air balancing in the Ambulatory Care Building. According to AWL, this language was put in because DASNY was considering compensating AWL separately for its supervision of this work, and wanted AWL to waive any

claims for supervision as related to this change order. (Pav.Aff.¶ 12.)

The next two change orders, Nos. 32 and 33 (Pav. Aff. Exhs 10 and 11) were executed without any additional waiver language.

The seventh change order, Change Order No. 36, again contained additional waiver language. (Thiersch Aff. Ex. C.) It appeared in the main text, two paragraphs above the standard print waiver, where it states: "AWL Industries will waive all rights to claims and compensation for the extension of their contract completion date." (Id.) This change order related to modifications to the steam system. (Id.)

Four subsequent change orders were executed on July 28, 2005 all without any additional waiver language. (Pav.Aff.Ex.12.) These change orders seem to be the final pieces of paperwork on change orders that had originally been logged by Turner Construction many months earlier, (Id.)

The AWL/Cole Subcontract sets forth a procedure for the recovery of extra or additional costs. Pursuant to § 6.3 of the Subcontract:

Any claims for extra or additional costs attributable to, or arising from unforeseen site conditions or orders, acts or omission of the Owner or others, shall be presented by AWL to Owner solely under the terms of the General Contract upon Subcontractor's timely written request, and Subcontractor shall accept and be conclusively bound by the determination of the Owner with respect thereto, relieving AWL of all liability in connection with any such claims. Nothing in this Article is intended, nor shall be construed to impose on AWL any obligation or responsibility to take any further action whatsoever with respect to such claims of Subcontractor or otherwise be answerable or liable in anyway for any acts or omissions of the Owner or others which cause damage to Subcontractor.

However, § 6.5 of the Subcontract contains a no-damages-for-delay clause, precluding any relief other than an extension of time for delays caused by AWL or DASNY. Specifically, the clause states:

Subcontractor agrees to make no claim for extra or additional costs or damages attributable to any delays, disruptions, interferences or inefficiencies in the performance of this Subcontract occasioned by any act or omission to act on the part of AWL or owner, or any of their representatives, or others, and it agrees that any such claim shall be fully compensated for by an extension of time to complete the performance of the Work as provided herein.

On or about June 28, 2005, Cole submitted a $1,322, 868, 73 "equitable adjustment claim" to AWL. This claim included the following items:

| | |
|---|---|
| Loss of Productivity | $ 897,162.00 |
| Materials Escalation | $ 104,998.97 |
| Labor Escalation | $ 28,472.64 |
| Extended Field Overhead | $ 1,750.00 |
| Extended Equipment Rental | $ 70,007.00 |
| Subtotal | $1,102,390.61 |
| OH & P @ 20% | $1,322,868.73 |

(CzikAff.Ex. C.)

Before receiving a response from AWL, Nova's attorney submitted the $1,322,868.73 claim directly to DASNY's project manager, Turner Construction Company, under cover of a letter dated August 3, 2005. (Thiersch Aff. Ex. D.) Turner returned Cole's claim, without review, under cover of a letter sent directly to AWL. Turner explained that Cole, as AWL's subcontractor, had to submit its claims to AWL, which could then submit the claim to DASNY on Cole's behalf.

Thereafter, by a letter dated September 26, 2005, AWL submitted to DASNY Cole's "equitable adjustment claim packet" in the total amount of $1,322,868.73. By a

letter dated February 23, 2006, DASNY denied Cole's claim, "based on previous statements that AWL has made in past change orders that have been signed and processed by the parties involved with this contract releasing any and all rights they may have with respect to additional claims." (Thiersch Ex. F.) The letter also stated that it DASNY received the summary of charges from Cole Mechanical, but found "no merit to Cole Mechanical's claim . . ." (Id.)

## C. Procedural History

On June 2, 2006, Nova commenced the primary action against Liberty on the Payment Bond, for which it is a surety, for AWL's failure to fully pay Nova and Cole for their work on the Project. Plaintiff seeks $3,123,258.33 in damages. This amount includes: (1) the $1,322,868.73 equitable adjustment claim, (2) $75,817.43 for unpaid contract and extra work performed by Cole;[1] (3) the Cole Contract balance of $188,515.13, and (4) Nova completion costs of $1,063,056.59.

On August 30, 2006, Liberty filed a third-party complaint against AWL for indemnification.

On September 19, 2006, AWL filed a fourth-party complaint against DASNY for indemnification on account of any damages sought in the third-party complaint. AWL alleges that any such damages were the result of the delays, acts, omissions or other breaches caused by DASNY. AWL also seeks costs, interest, and attorneys' fees.

## II. Discussion

### A. Standard of review

 Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834 F.2d 54, 57 (2d Cir.1987).

In this diversity action, New York State's substantive law applies. See DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir.1994).

### B. DASNY's motion/or summary judgment

DASNY argues that the fourth-party complaint must be dismissed because AWL waived its right to bring such a claim when it executed the change orders.

 Whether the language set forth in the releases executed by DASNY is clear and unambiguous so as to bar the fourth-party complaint is a question of law appropriately determined by the Court on a motion for summary judgment. Worth Construction Co., Inc. v. I.T.R.I. Masonry Corp., 2001 WL 209924, at *5, 2001 U.S.

---

1. Plaintiff also claims damages for certain "Cole–AWL Direct Items," which total $541,488.24.

Dist. LEXIS 2144, at *13–14 (S.D.N.Y. 2001).

■ "[T]he intent to waive a right must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act," *Orange Steel Erectors v. Newburgh Steel Prods.*, 225 A.D.2d 1010, 1012, 640 N.Y.S.2d 283(1996).

■ Every change order that was executed between AWL and DASNY contained a standard unambiguous waiver that released the DASNY from "any and all actions, causes of action, claims and demands whatsoever in law or in equity which the contractor ever had, now has or may have against the Dormitory Authority of the State of New York in any way arising out of this change."

AWL does not assert any claim of fraud or duress. AWL's only defense is that the standard release somehow doesn't mean what it purports to mean.

AWL argues that because some change orders contained additional waiver language, and other did not, the parties believed that an actual waiver only occurred when there was additional language to that effect. This argument is unpersuasive.

The additional language contained in change orders 100 and 36 does not render ambiguous the standard releases contained in all the change orders. First, as AWL admits, special circumstances necessitated the insertion of additional waiver language in Change Order No. 100. DASNY was considering compensating AWL separately for its supervision of this work, and thus wanted AWL to waive any claims for supervision as related to Change Order No. 100. Second, the additional waiver language in Change Order No. 36 does not contradict the standard print waiver—if anything, it re-emphasizes the standard waiver language.

The standard printed release appears in every change order, and is clear and un-ambiguous. Because AWL waived its right to bring any such claim against DAS-NY when it executed the change orders, the fourth-party complaint is dismissed.

### C. Liberty and AWL's cross-motion for partial summary judgment

■ Defendant Liberty and Fourth–Party Plaintiff/Third–Party Defendant AWL argue that the Court should dismiss the $1,322,868.73 "equitable adjustment claim" against Liberty, because, pursuant to the Subcontract, AWL's sole obligation was to submit this claim to DASNY on a "pass through" basis.

Plaintiff does not dispute that AWL submitted the equitable adjustment claim to DASNY. Instead, plaintiff argues that there are issues of fact regarding (1) DAS-NY's rationale for rejecting the equitable adjustment claim, and (2) whether AWL acted in good faith in submitting plaintiff's claims to DASNY. Both arguments fail.

With respect to plaintiff's first argument, § 6.3 of the Subcontract states, "Subcontractor shall accept and be conclusively bound by the determination of the Owner with respect thereto, relieving AWL of all liability in connection with any such claims," By a letter dated February 23, 2006, DASNY stated that it received the summary of charges from Cole Mechanical, but found "no merit to Cole Mechanical's claim …" (*Id.*) Pursuant to the Subcontract, plaintiff is "conclusively bound" by DASNY's determination.

■ As to plaintiff's second argument, the record contains no evidence that AWL did not present plaintiff's claim in a fair and serious manner. *See T.G.I. East Coast Const. Corp. v. Fireman's Fund Ins. Co.*, 534 F.Supp. 780, 782 (S.D.N.Y.1982). On a motion for summary judgment, a party opposing the motion must offer evidence to raise a genuine issue of fact for trial. Plaintiff merely points to several

emails, none of which raise an issue of material fact. (Czik Aff. Exs. K, L, M, N.)

The Court also notes that plaintiff's equitable adjustment claim is clearly barred by § 6.5 of the Subcontract. This section precludes any relief, other than an extension of time, for delays caused by AWL or DASNY. Plaintiff's equitable adjustment claim covers loss of productivity, materials escalation, labor escalation, extended field overhead, and extended equipment rental. It is obvious to the Court that plaintiff's "equitable adjustment claim" is really just a masked "damages for delay" claim.

### III. Conclusion

For the foregoing reasons, both motions are granted.